## Case No. 15,297.

UNITED STATES v. HAND.

[2 Wash. C. C. 435.] [1]

Circuit Court, D. Pennsylvania.    April Term. 1810.

ASSAULT UPON FOREIGN CHARGE D'AFFAIRES—INTENT—INTERNATIONAL LAW.

1. Indictment for an assault upon the chargé d'affaires of Russia, and for infracting the law of nations, by offering violence to the person of the said minister.

2. When the minister had a large party at his house, and a transparent painting at his window, at which a mob who had collected took offence, the defendant fired two pistols at the window, his intention being to destroy the painting, without doing injury to the person of the minister, or of any one.

3. An assault is an offer or an attempt to do a corporal injury to another. as by striking at him with the hand or with a stick, or shaking the fist at him, or presenting a gun, or other weapon. within such distance as that a hurt might be given: or drawing a sword, and brandishing it in a menacing manner—each of those acts to be done with intent to do some corporal hurt to another.

4. The law of nations identifies the property of the foreign minister. attached to his person, or

[1] [Originally published from the MS. of Hon. Bushrod Washington, Associate Justice of the Supreme Court of the United States, under the supervision of Richard Peters, Jr., Esq.]

in his use, with his person. To insult them. is an attack on the minister and his sovereign; and it appears to have been the intention of the act of congress, to punish offences of this kind.

5. To constitute an offence against a foreign minister, the defendant must have known that the house on which the attack was made was the domicile of a minister; or otherwise, it is only an offence against the municipal laws of the state.

The first count contains a charge of an assault upon the person of Mr. Daschkoff, the Russian chargé d'affaires; and the second, for infracting the law of nations, by offering violence to the person of the said minister. The defendant pleaded not guilty. The evidence was, that on the night of the 26th of March, the minister, with a view to celebrate the coronation of his sovereign, invited a large party to his house; and from a desire to compliment the persons without, and to evidence the friendship between his government and this, placed at one of the windows of his drawing-room on the second floor, a transparent painting, which represented a vessel under the American flag entering a port of Russia, above which was placed a crown. The people without, misunderstanding the design of the painting. and the intention of the minister in exhibiting it, took offence at the crown, and particularly at its position over the American flag. A large crowd collected, many threats to pull it down were clamorously made, and some bricks and stones were thrown at the house. Some of the gentlemen from the house went out to explain the matter to the mob, and endeavoured to pacify them, but in vain. They promised, however, that they would be satisfied if the minister would take down the crown, and agreed to give a certain number of minutes for this to be done. In the mean time, the defendant, with a Mr. Henderson, having left the theatre between 11 and 12 o'clock, attracted by the illumination. went to see what it was. Hand and Henderson soon separated in the crowd. the latter exerting himself to pacify the people. Some short time afterwards the defendant, who lived in Fifth street between Market and Arch. was seen coming from Seventh street. in Chestnut, to the crowd opposite the minister's house. between Seventh and Eighth streets. He carried in each hand a large pistol, and. coming opposite to the house, in less than two minutes fired one pistol at the illuminated window. and immediately after. the second. At this time, the minister and one of his domestics were in the window. extinguishing the lights. in compliance with the wishes of the mob; and the bullet from the pistol first fired, passed into the room, through the window over their heads. The company fortunately was below stairs, at supper. when the pistols were fired. The defendent was proved to have been considerably intoxicated, and was taken, by his friends, to a friend's house, where, being informed of the insult done to the Russian em-

bassador. he declared he did not know it was his house; which he afterwards repeated. No proof was given that he had this knowledge.

WASHINGTON, Circuit Justice (charging jury) The indictment contains two counts, or charges. upon which the jury must pass; and I shall therefore consider them distinctly. The first is for an assault upon the Russian minister, against the provisions of the act of congress. The definition of an assault (1 Bac. Abr. tit. "Assault," 242) is an offer or attempt by force to do a corporal injury to another; as if one person strike at another with his hands, or with a stick, and misses him; for, if the other be stricken, it is a battery, which is an offence of a higher grade. Or if he shake his fist at another, or present a gun, or other weapon, within such distance as that a hurt might be given; or drawing a sword, and brandishing it in a menacing manner. But it is essential to constitute an assault, that an intent to do some injury should be coupled with the act; and that intent should be to do a corporal hurt to another. Apply these principles to the evidence in the cause. The intention of the defendant most clearly was, to destroy, or, as he termed it, to take down. the crown, which his heated mind had construed into an insult to the service of which he was a member. His whole conduct showed that his intention was not to do a personal injury to any one, and certainly no act was done in the smallest degree indicative of such intention. The outrage of which he was guilty, must be reprobated by all good men, and deserves to be punished; but it did not amount to an assault upon the Russian minister, which is the offence charged in the first count of the indictment. Upon this count, therefore, the jury ought to find him not guilty.

The second count charges him with infracting the law of nations, by offering violence to the person of the minister. Here again, the difficulty recurs, which has been noticed under the first count. How can an attack upon the house of the minister, without an intention to injure the person of the minister, be an offer of violence to his person? Upon common law principles, such evidence would seem inapplicable to such a charge. But the act of congress refers us to the law of nations for our test; and if the act amount to the offer of personal violence, by that law, the charge is supported. That law, with respect to offences committed against ambassadors, &c., identifies the property of the minister. attached to his person, or in his use, with the person of the minister. The expressions of Vattel are very strong: "His house. carriage. equipage. family. &c., are so connected with his person. as to partake of the same fate with it. To insult them. is an attack on the minister himself. and upon his sovereign. It is an insult to both." Vatt.

Law Nat. 618, 715, 719, et seq. All this is a legal fiction, for the purpose of rendering the protection to which the minister is entitled full and complete, and to guard him, as well against insults, as real personal injury. It is not more extravagant than the fiction which considers the minister, his house and property, out of the country, for the purpose of ousting the jurisdiction of the tribunals of the country over him. Nor is it more strange than that which once prevailed in our law, though long since overruled, that provoking words alone would amount to an assault. Moreover, it seems pretty clear, that offences of this sort were intended to be covered by the general expressions of the 27th section of the law to punish crimes. The preceding part of the section had specified four distinct offences, the lowest of which is an assault; and it is difficult to imagine any directly against the person of the minister, which can be lower. But congress knew that there were many other injuries which might be offered to a public minister, and which the law of nations considered as being indirectly attacks upon his person, and, without attempting a further specification, covered under general expressions all such as were deemed by the law of nations to be offences against the person of the minister. Without such a construction, it would be difficult, if not impossible, to imagine cases of violence against the person, to satisfy the general words, which are not included in those that are specified in this and the two preceding sections. But, to constitute this an offence against the law of nations, the defendant must have known that the house upon which the violence was committed was the domicile of the minister; or otherwise, it is merely an offence against the municipal laws of Pennsylvania: and this is the only point of consequence for you to decide. Without giving any opinion upon the evidence, I shall content myself with presenting it fairly to your view.

It is always difficult, and frequently impossible, to bring home to any man the knowledge of a fact, by positive proof; and therefore, it may fairly be collected from circumstances. But these circumstances should be legally proved, and should be sufficiently strong to satisfy the mind that the fact was known. In favour of the defendant, his declaration, immediately after the outrage was perpetrated, that he did not know that it was the house of the minister, made in a state of mind when caution and reflection were not to be expected, and that, at different times afterwards, confirmed by similar declarations, have been much relied upon by his counsel. The denial of the accused is certainly the lowest species of proof; but it may be sufficient to repel slight evidence to fix him with a knowledge of the fact. On the other side, the defendant lived in Philadelphia; and if he had not obtained by this means a previous knowledge of the residence of the minister, the occasion which drew him to the spot, the novelty of the sight, the appearance of a crown, the general irritation of the crowd, and of the defendant in particular, at its position, were all calculated to excite inquiries, which it is proved by the witnesses could at once have been answered. It appears that some of those who went there ignorant that this was the house of the minister, soon gained information of the fact. One of the gentlemen from the house had addressed the crowd, and explained to them the occasion of the illumination, and the impropriety of their conduct upon the occasion. If it had been proved that the defendant was one of the crowd at this time, the evidence against him would be complete. But it seems very probable, that soon after his first coming to the place, and possibly before this explanation was given, he had gone away in pursuit of his pistols; and it is in proof, that almost immediately upon his return, he fired them. It is possible also, from the state of intoxication in which he was, that he did not wait to make inquiries. As to this fact, upon which the cause turns, the jury must judge. If they are satisfied, upon the evidence, that he knew this to be the residence of the minister, they ought to acquit him under the first count, and find him guilty under the second. If otherwise, find him not guilty, generally.

Verdict not guilty.