James Gary **BRUNDAGE**, Appellant,

v.

**UNITED STATES** of America, Appellee.

No. 8721.

United States Court of Appeals
Tenth Circuit.

Sept. 6, 1966.

E. Michael Canges, Denver, Colo., for appellant.

Robert E. Long, Littleton, Colo. (Lawrence M. Henry, U. S. Atty., with him on brief), for appellee.

Before MURRAH, Chief Judge, and SETH and HICKEY, Circuit Judges.

MURRAH, Chief Judge.

This appeal is from a conviction and sentence on a charge of assault with a dangerous weapon in violation of 18 U.S. C. § 113(c). Jurisdiction is conceded because the alleged acts were committed upon lands within the territorial jurisdiction of the United States, i. e. a federal correctional institution.

The first complaint on appeal is that appellant was denied due process of law because the trial court refused to allow counsel to orally voir dire the prospective jurors and more particularly because of the refusal to question the prospective jurors on the subject matter of insanity or mental illness as requested orally and in writing by trial counsel. The contention is that inasmuch as mental capacity to commit the offense charged was a vital issue in the case, counsel should have been permitted to extensively inquire of the prospective jurors concerning their views on insanity as a defense to the charge and their experiences, if any, with mental illness. The trial court's inquiry in that regard is said to be erroneously inadequate.

■■ It is, of course, conceded that under the applicable rule of criminal procedure, the court may itself conduct the examination of prospective jurors provided it permits "the defendant or his attorney and the attorney for the government to supplement the examination by such further inquiry as it deems proper or shall itself submit to the prospective jurors such additional questions by the parties or their attorneys as it deems

proper." Rule 24 F.R.Crim.P. The court's discretion under this rule will not be disturbed, unless it appears from the record that its voir dire was inadequate to properly test the qualifications and competency of the prospective jurors to sit on trial of the case. See Speak v. United States, 10 Cir., 161 F.2d 562; Brown v. United States, 119 U.S.App. D.C. 203, 338 F.2d 543; Goosman v. A. Duie Pyle, Inc., 4 Cir., 320 F.2d 45; Alverez v. United States, 9 Cir., 282 F.2d 435; United States v. Clancy, 7 Cir., 276 F.2d 617; Butler v. United States, 4 Cir., 191 F.2d 433. Certainly the trial court is not required to propound questions which are argumentative, cumulative or tangental.

■ In this jurisdiction voir dire is customarily conducted by the trial judge and it is his responsibility to probe the minds of the prospective jurors concerning their precognitions, predilections, experiences and any other matters which may peculiarly bear upon their qualifications and competency to serve fairly and impartially in the particular case. In our case the distinguished trial judge did not fail to perform his full duty in that respect. The voir dire of prospective jurors consumed approximately thirty-five pages of the record in which the court stated the nature of the offense, the presumption of innocence, the burden of proof, the function of the court and jury and then inquired of each prospective juror concerning his knowledge of the case, his experience, if any, with like matters and asked other probing questions designed and having the effect of exploring their minds to determine fitness and qualifications to sit as an impartial juror. The prospective jurors were informed that lack of mental capacity to commit the offense charged had been raised as a defense and that the burden was on the government to prove mental capacity to commit the offense. They were then asked whether any of them had a fixed view point on the subject of mental incapacity and if each and every one of them had an open mind and would listen to the evidence and base their verdict on the law of the case as given to them by the court.

■ Trial counsel objected to the court's voir dire and requested that he "delve further on the question of mental illness" and particularly whether mental illness had affected any of the jurors lives in any way either through friend, relative or acquaintance and whether they were acquainted with any psychiatrists, psychologists or other specialists in diseases of the mind and whether they had any experiences or preconceptions so far as the general character of insanity in a criminal case. We think the trial court's inquiry on the insanity issue was entirely adequate and that it properly declined to propound the requested questions.

■ In its instructions to the jury on insanity as a defense the court followed the rule of this Circuit in Wion v. United States, 325 F.2d 420, and did so in commendably plain and simple language which the jury could not fail to understand and apply to the facts of the case. The court was requested to instruct the jury on the test of criminal responsibility in accordance with Durham v. United States, 94 U.S.App.D.C. 228, 45 A.L.R. 2d 1430, 214 F.2d 862, and United States v. Currens, 3 Cir., 290 F.2d 751, and on appeal complains of the court's refusal to so instruct. It is sufficient to say that Wion is the law of this Circuit, and appellant was not denied equal protection by the refusal of the court to instruct in accordance with the rule of another jurisdiction.

Finally, complaint is made of the refusal of the court to direct a verdict of acquittal for failure to prove the charge of assault. The proof was that both the assailant and the assailed were inmates of the Federal Correctional Institution at Englewood, Colorado. While the victim was sitting with another inmate, he was struck on the head from behind by the appellant with a piece of iron pipe. The victim did not see his assailant, and had no warning until the blow was struck. While the victim was lying on a bed

where he had fallen from the blow, the appellant kicked him and menacingly raised the iron pipe telling him "Get up off my bed else I'll kill you."

On his Rule 29 motion for judgment of acquittal and here appellant's counsel takes the position that if the government had proved anything, it had proved a completed battery. The argument is that Congress was dealing with common law assault which is nothing more than an attempted battery, and that upon completion of the battery, the assault was merged therein and no longer punishable. See Blackstone, Commentaries on the Laws of England, Book 3, p. 120, Book 4, pp. 216–17; Anderson v. Crawford, 10 Cir., 265 F. 504, 507, quoting Mr. Justice Washington in United States v. Hand, 2 Wash.C.C. 435, 437, 26 F.Cas. 103, No. 15,297.

Congress did not define the term "assault", and it will be presumed that it intended to embrace the common law meaning, i. e. see Hite v. United States, 10 Cir., 168 F.2d 973. In its instructions the court defined "assault" as "an attempt * * * coupled with the present ability to commit a violent injury upon the person of another. * * * this does not require that there shall have been a completed act; * * * the attempt alone is sufficient to constitute an assault, provided that it is in such close proximity with the person that it can be said that it is committed in a manner whereby there is an apparent present ability to carry out the attempt." The jury was further told that specific intent was an essential ingredient of the offense and that "This means that the act was committed knowingly, that is with knowledge as to what the defendant was doing and with the desire or wish to bring about a serious bodily injury to the person of the other."

These instructions are in complete conformity with the applicable law. We need not resolve the question whether upon consummation of the battery the assault became merged therein and was no longer punishable, for the proof is

entirely sufficient to prove beyond a reasonable doubt that an assault with a dangerous weapon was committed after the fact of battery. The judgment is affirmed.