Frederick Allen **HOCKENBERRY**, Appellant,

v.

**UNITED STATES** of America, Appellee.

No. 22993.

United States Court of Appeals Ninth Circuit.

Jan. 20, 1970.

Alan Saltzman (argued), Hollywood, Cal., for appellant.

Michael J. Lightfoot (argued), Michael Nasatir, Robert L. Brosio, Asst. U. S. Attys., Wm. Matthew Byrne, Jr., U. S. Atty., Los Angeles, Cal., for appellee.

Before CHAMBERS, JERTBERG and DUNIWAY, Circuit Judges.

DUNIWAY, Circuit Judge:

Hockenberry appeals from his conviction under an indictment charging him with committing an assault with a deadly weapon at the Federal Correctional Institution at Lompoc, California. We affirm, but direct that the sentence be corrected.

We consider each of Hockenberry's contentions, and the specific facts relating to them, separately:

1. *Sufficiency of the indictment.*

The indictment reads:

"The Grand Jury charges:

[18 U.S.C. § 7, § 13; Calif.P.C. § 245]

On or about June 17, 1967, within the special maritime and territorial jurisdiction of the United States, namely, Federal Correctional Institution at Lompoc, California, in Santa Barbara County, California, within the Central District of California, defendant FRED ALLEN HOCKENBERRY did wilfully, unlawfully and feloniously commit an assault with a deadly weapon upon Randall Harold Schoenfeld, a human being."

█ It was stipulated that the Federal Correctional Institution at Lompoc is within the "special jurisdiction" of the United States as defined in 18 U.S.C. § 7(3). The indictment was drawn on the theory that the Assimilative Crimes Act, now 18 U.S.C. § 13, made California Penal Code § 245 applicable. However, 18 U.S.C. § 13 makes state law applicable only if the "act or omission * * * [is] not made punishable by any enactment of Congress * * *." Here, as the government now concedes, there is an applicable act of Congress. 18 U.S.C. § 113 provides:

"Whoever, within the special maritime and territorial jurisdiction of the United States, is guilty of an assault shall be punished as follows: * * *

(c) Assault with a dangerous weapon, with intent to do bodily harm, and without just cause or excuse, by fine of not more than $1,000 or imprisonment for not more than five years, or both."

It follows that Cal.Pen.C. § 245 is not applicable. Williams v. United States, 1946, 327 U.S. 711, 66 S.Ct. 778, 90 L.Ed. 962.

█ This, however, does not dispose of the problem. The California section proscribes "an assault upon the person of another with a deadly weapon or instrument or by any means of force likely to produce great bodily injury * * *." 18 U.S.C. § 113(c) proscribes "[a]ssault with a dangerous weapon, with intent to do bodily harm, and without just cause or excuse * * *."

█ The charging language of the indictment is "did wilfully, unlawfully and feloniously commit an assault with a deadly weapon." This is sufficient to charge an offense under § 113(c). The words "wilfully, unlawfully and feloniously" sufficiently indicate the necessary intent. The facts proved clearly show it; Hockenberry stabbed a fellow inmate with a knife. To the effect that such an assault falls within § 113(c), see Brundage v. United States, 10 Cir., 1966, 365 F.2d 616, 619. A knife is both a "deadly weapon" (Pen.C. § 245) and a "dangerous weapon" (18 U.S.C. § 113(c)). An assault with such a weapon, done "wilfully * * * and feloniously" would normally be done "with intent to do bodily harm." (18 U.S.C. § 113(c)). The facts that, in its heading, the indictment refers to the wrong statute, and that it does not use the exact language of § 113(c) are not fatal. Kniess v. United States, 9 Cir., 1969, 413 F.2d 752, 759.

█ It was not necessary to recite that the assault was "without just cause or excuse." If there was such cause or excuse, the defendant could show it; the government did not have the burden of pleading or proving its absence. By a rule of long standing, "an indictment or other pleading founded on a general provision defining the elements of an offense, or of a right conferred, need not negative the matter of an exception made by a proviso or other distinct clause, whether in the same section or elsewhere, and * * * it is incumbent on one who relies on such an exception to set it up and establish it." McKelvey v. United States, 1922, 260 U.S. 353, 357, 43 S.Ct. 132, 134, 67 L.Ed. 301. See also United States v. Rowlette, 7 Cir., 1968, 397 F.2d 475, 479; United States v. W. J. Dillner Transfer Co., 3 Cir., 1963, 315 F.2d 107, 109, cert. denied, 1963, 373 U.S. 951, 83 S.Ct. 1681, 10 L.Ed.2d 706; United States v. Hansen, 9 Cir., 1958, 264 F.2d 540, 543.

█ The indictment does not conform exactly to the language of the applicable

statute, but we are admonished by Rule 7(c), F.R.Crim.P. that "[e]rror in the citation [of the statute] or its omission shall not be ground for dismissal of the indictment * * * or for reversal of a conviction if the error or omission did not mislead the defendant to his prejudice," and by Rule 52(a) that "[a]ny error, defect, irregularity or variance which does not affect substantial rights shall be disregarded." Here, no contention is made that Hockenberry was misled to his prejudice, or that the defects or irregularities in the indictment affected substantial rights. The record would not support such a contention if it were made. The only claim is that the court lacked jurisdiction. That is plainly wrong.

■ However, Hockenberry was sentenced to ten years, the maximum under the California statute. The maximum sentence under 18 U.S.C. § 113(c) is five years. Thus the indictment does not support the sentence imposed. The case must be remanded for a reduction of the sentence. See Kniess v. United States, *supra*; Dunaway v. United States, 10 Cir., 1948, 170 F.2d 11, 13.

### 2. *Comment by the judge.*

Hockenberry was seen by a guard to strike a fellow inmate in the back at about 7:00 o'clock in the morning. The blow caused a wound. About half an hour later, another guard found a knife hidden beneath a cabinet in a latrine. The cabinet and sink were covered with bloodstains. The knife bore Hockenberry's fingerprint. At about 8:00 o'clock Hockenberry appeared at the prison infirmary for treatment of a wound on his right hand. The doctor asked how he got the wound. The reply was "Quit fucking with me." On cross-examination by defense counsel the doctor said that Hockenberry did not say that he had cut himself with a razor blade. The cross-examination then continued:

"Q. Do your records reflect that?

A. Yes, there is a typed up accident report which says or which quotes inmate Hockenberry as saying, 'I cut myself with a razor.'

\* \* \* \* \* \*

Q. Now, * * * would you be able to state as a doctor that due to the nature and extent of his wound that it would be possible that his wound had been inflicted by a razor blade?

A. Yes, it is possible."

On appeal Hockenberry objects to a comment on the evidence made by the trial judge as a part of his instructions to the jury.

"There has been some evidence, rather indirect here, that the defendant made a statement at the time and consequently I feel it is necessary to give the following instruction. *Although the doctor, who is the one who talked to him, said that he did not make any incriminating statements or confessions to him but that the doctor had heard that he had.* So a confession is an admission by a defendant of all the material facts constituting the crime charged.

An admission is something less than a confession and may consist of any statement or other act or conduct by a defendant whereby he expressly or impliedly acknowledged, other than in this trial, a fact or facts which may contribute in some degree to the proof of his guilty [sic] of the alleged crime for which he is on trial." (Emphasis added.)

This was followed by the usual instruction that a confession or admission should be subjected to careful scrutiny to determine whether it was voluntarily made.

Defense counsel raised his objection to the comment after it had been given to the jury but before the jury retired. The colloquy that ensued at the bench is set

out in the margin.[1] It is apparent that both the judge and counsel were partially in error in their recollection. The judge was wrong in thinking that, on cross-examination, counsel brought out a statement that the doctor had heard something to the effect that Hockenberry had the knife. Counsel was wrong as to what the doctor was told by Hockenberry, and as to the doctor's having supposed that Hockenberry did the stabbing. None of this harmed the defendant; the jury did not hear it.

All that the jury heard to which the comment could conceivably apply was, 1. Hockenberry's statement to the doctor, "Quit fucking with me" brought out on direct, and 2, the fact brought out by Hockenberry's counsel, that the medical record recited that Hockenberry said he had cut himself with a razor. Both could be considered mildly incriminating,

the first as possibly showing consciousness of guilt, the second as a possible attempt to cover up guilt by a false assertion as to how Hockenberry's hand was cut. There was nothing in the record that could possibly be considered a confession as the court defined it. As applied to what the jury did hear, the instruction, taken as a whole, seems favorable to the defendant. It certainly was not so prejudicial as to require a reversal. *Cf.* Lyons v. United States, 9 Cir., 1963, 325 F.2d 370, 375, cert. denied, 1964, 377 U.S. 969, 84 S.Ct. 1650, 12 L.Ed.2d 738; Heinecke v. United States, 1961, 111 U.S.App.D.C. 98, 294 F.2d 727, 728; Pool v. United States, 9 Cir., 1958, 260 F.2d 57, 66.

It is also claimed that the government should have shown that the doctor gave Hockenberry a *Miranda* type warning (Miranda v. Arizona, 1966, 384

---

1. "[Defense Counsel]: The court instructed the jury regarding statements or confessions or admissions made by the defendant to the doctor.

The Court: I did that in an excess of precaution in favor of the defendant because I forgot whether you asked him on cross-examination, somebody asked him if he had heard that the defendant had made some statements.

[Defense Counsel]: It is my recollection that the doctor's testimony, your Honor—perhaps I am mistaken—

The Court: He said that he had heard that he had made some statements to the effect that he had the knife, or something like that. So the doctor's testimony alone as to what he heard would not justify me in giving that instruction, but I felt that the jury should be warned in view of the fact that you got into evidence that he had been told that the defendant had made some statement incriminatory and that the jury should be warned concerning it.

[Defense Counsel]: My recollection differs from your Honor's.

The Court: Tell me what your recollection of it was.

[Defense Counsel]: The only recollection that I recall was that the doctor testified that at 7:10 or 7:30 in the morning he was awakened at his residence to come down to the hospital.

The Court: The statement was he

asked the defendant how it happened and the defendant said, 'Quit fucking around with me.' That is what the doctor testified to.

[Defense Counsel]: That is not correct, your Honor.

The Court: What did he testify to?

[Defense Counsel]: The only recollection that I have that the doctor testified against this man here was that the doctor could not get this man to make any comments period, that he had heard that there had been a stabbing and he supposed that the defendant was responsible for the stabbing, but the doctor testified he was very uncooperative and would not talk at all.

[Government Counsel]: He also made the statement which Judge Hall remembers, 'Don't fuck around with me,' or something like that, which can be construed as an admission and the instruction was properly given as a precaution to the defendant.

The Court: I think it is a precautionary instruction. The jury may feel that the man by that attitude and by that statement was making an admission. I don't know.

[Defense Counsel]: I take the opposite viewpoint.

The Defendant: The way he worded it it sounded like I made the statement or he heard that I made the statement.

The Court: No, the jury knows there is no written statement."

U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694) before asking how Hockenberry got the cut on his hand. But there was no objection at all to the question; the point was never raised before the trial judge. It is not available on this record. *A fortiori* the point is not good as to the statement about what the medical record showed. That statement was brought out by the defense.

The judgment of conviction is affirmed. The sentence is vacated and the matter is remanded to the trial court with directions to resentence the defendant to such a term, not exceeding five years, including time served, as the court may determine.