PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-2875
_____

UNITED STATES OF AMERICA

v.

AARON TAYLOR,
Appellant

_____

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Criminal No. 2-07-cr-00288-001)
District Judge: Honorable Paul S. Diamond
_____

Argued May 22, 2012

Before: RENDELL, FUENTES and HARDIMAN,
Circuit Judges

(Opinion Filed : July 25, 2012 )
_____

Mark E. Cedrone, Esq.     **[ARGUED]**
Law Offices of Mark E. Cedrone
123 South Broad Street, Suite 810
Philadelphia, PA  19109
   *Counsel for Appellant*

Virgil B. Walker, Esq.     **[ARGUED]**
Office of United States Attorney
615 Chestnut Street, Suite 1250
Philadelphia, PA  19106
   *Counsel for Appellee*

_____

OPINION OF THE COURT
_____

RENDELL, <u>Circuit Judge</u>.

This case requires us to consider whether, by including "without just cause or excuse" in the federal assault with a dangerous weapon statute, 18 U.S.C. § 113(a)(3), Congress intended to convert justification, ordinarily a common-law defense, into an element of the offense as to which the government bears the burden of proof beyond a reasonable doubt.  Applying relevant Supreme Court precedent, we conclude that the existence of just cause or excuse is an affirmative defense to a § 113(a)(3) violation, and the defendant bears the burden of proving it by a preponderance of the evidence.  Taylor also raises two issues relating to his testimony and offers of proof regarding justification for the assault and complains that he was selectively prosecuted.  We conclude, however, that none of those arguments has merit. We will affirm the judgment of the District Court.

# I.

## A. Factual Background

In the fall of 2006, defendant Aaron Taylor, who had been convicted of drug and weapons charges, was an inmate at the Federal Detention Center (FDC) in Philadelphia. Because of some prior disciplinary violations, including previous prison assaults, Taylor was assigned to the Special Housing Unit (SHU), separate from the general prison population.

Prisoners in the SHU are allowed one hour of recreation a day, five days a week, in a fifteen-by-fifteen foot yard. Before each session, a guard asks every inmate whether he would like to take or decline recreation. Two guards then handcuff each inmate who desires recreation and transport him to one of five enclosed yards. After the inmate enters the yard, he turns his back to the locked door and places his cuffed hands into a slot (also called a "wicket") so the guards on the other side of the door can uncuff him. The same process occurs at the end of the hour: one at a time, the inmates back up to the wicket so the guards can handcuff them. Once all of the inmates have been handcuffed, the guards unlock the door and transport the inmates back to their cells. According to a prison guard who testified at Taylor's trial, an inmate may decline recreation, and be returned to his cell, at any time during the hour.

According to Taylor, racial tensions at the FDC were inflamed in September 2006 when a white, female psychiatrist told Taylor, who is black, to stop looking at her. Wayne Maruzin, a white inmate, overheard the exchange and, according to Taylor, later discussed the incident with Peter

Bistrian, another white inmate. Bistrian then threatened Taylor. About a week later, Taylor filed a complaint with the warden asserting that the psychiatrist's comments were racially motivated and exacerbated racial tension among the inmates.

In early October 2006, a guard mistakenly gave Taylor an extra razor blade. Taylor used the extra blade to fashion a knife, or "shank."

Then, on October 12, 2006, Taylor was placed in the same recreation yard with Bistrian. The guards removed Taylor's handcuffs before they removed Bistrian's, and the two paced the yard for almost the entire hour. Taylor testified that Bistrian did not make any aggressive move towards him during the hour, but, after half an hour, Bistrian asked him what he was looking at and, later, told him he was "going down," which Taylor understood to mean that Bistrian was "going to come after" him.

At the end of the hour, Bistrian backed up to the wicket to be handcuffed. Taylor, who had not yet been handcuffed, followed Bistrian, and, as soon as Bistrian was handcuffed, attacked him. Taylor punched Bistrian and slashed his face, arms, and legs with the shank. Bistrian fell to the ground and kicked at Taylor. Taylor ignored the guards' repeated commands to stop and continued attacking Bistrian for more than two-and-a-half minutes. The guards used three cans of pepper spray to try to subdue Taylor but did not succeed until they tossed a "flash bang" grenade into the yard, stunning him. When the guards entered the yard, Taylor told them repeatedly that he "had to get" Bistrian before Bistrian got him. Bistrian was treated at the hospital

4

for deep cuts to his face, arms, and legs. The entire incident was captured on video by the FDC's surveillance cameras.

## B. Procedural History

Taylor was indicted and charged with assault with a dangerous weapon, under 18 U.S.C. § 113(a)(3), and assault resulting in serious bodily injury, under 18 U.S.C. § 113(a)(6), in May 2007. The government ultimately sought dismissal of the second count, and the case went to trial on a single count of assault with a dangerous weapon on November 30, 2010. Taylor did not dispute that he had attacked Bistrian, but attempted to show that he was justified in doing so. Taylor was convicted on December 3, 2010, and, on June 28, 2011, was sentenced to 120 months in prison, to be served consecutively to the federal sentence he was serving when the assault occurred.

Before trial, Taylor moved to dismiss the indictment for selective prosecution. His theory was that the prosecution was racially motivated because he was charged for this assault, on a white victim, but had not been charged for an earlier assault, also using razor blades, on two black inmates. The District Court denied the motion without ordering the government to produce discovery or holding a hearing.

Also before trial, the government filed motions in limine for a hearing on, and then to preclude altogether, Taylor's justification defense. The government argued that Taylor's evidence, which consisted of testimony from Taylor, several fact witnesses, and an expert on prison culture and would have described the racial tensions in the prison and asserted that Bistrian's threats against Taylor justified the attack, failed to establish the defense as a matter of law.

5

In this Circuit, the elements of justification are:

> First, that [the defendant] was under an immediate, unlawful threat of death or serious bodily injury to himself or to others;
>
> Second, that [the defendant] had a well-grounded [or reasonable] fear that the threat would be carried out if he did not commit the offense;
>
> Third, that [the defendant's] criminal action was directly caused by the need to avoid the threatened harm and that [the defendant] had no reasonable, lawful opportunity to avoid the threatened harm without committing the offense; that is, that [the defendant] had no reasonable lawful opportunity both to refuse to do the criminal act and also to avoid the threatened harm; and
>
> Fourth, that [the defendant] had not recklessly placed himself in a situation in which he would be forced to engage in criminal conduct.

Third Cir. Model Crim. Jury Instr. § 8.04.

The District Court held a hearing on November 22, 2010, at which Taylor made an offer of proof. Two days later, the District Court denied the government's motion without prejudice and decided to allow Taylor to testify. The Court stated, "I'm going to allow the defendant to testify to whatever the defendant is going to testify to. . . . [I]f the defendant testifies to justification, whether or not I allow the defendant to call any other witnesses to support that will depend entirely on what the defendant has to say." At the same time, the District Court made clear that it was skeptical of the merits of Taylor's proffer:

> Mr. Cedrone [Taylor's attorney], as you described [Taylor's] testimony yesterday, it doesn't cover all the elements [of a justification defense] and the ex parte submission you've made today . . . also doesn't cover all the elements. . . . .
>
> However, I'm not going to — whatever discretion I may have to preclude a defendant's testimony with respect to justification, I'm not going to exercise that discretion. I'm going to allow the defendant to testify, tell his story, and at the conclusion of his testimony we will revisit the issue of whether or not you may call any witnesses to corroborate that.

> Just to give you an idea of what my thinking is, based on your proffer, your proffer does not offer a defense of justification. It covers, perhaps, one element but it certainly doesn't cover all the required elements.

The government objected to the District Court's ruling, arguing that, because of the lack of support for his defense, Taylor should not be allowed to testify as to justification.

At trial, Taylor moved for a judgment of acquittal after the prosecution rested its case. The District Court denied the motion. Taylor took the stand and presented his version of the events surrounding the attack. Before he was allowed to present additional witnesses, however, the District Court asked Taylor for a second offer of proof. Taylor proffered the testimony of five fact witnesses and his prison-culture expert. None of the proposed witnesses actually saw the assault; Taylor proposed that they would testify about the earlier incident with the prison psychiatrist, the resulting racial tensions, and the fact that Bistrian knew how to escape from handcuffs and use them as a weapon (to bolster Taylor's theory that Bistrian was more dangerous when cuffed than when the inmates were pacing together in the yard). After Taylor's proffer, the District Court precluded him from putting on any of the proffered witnesses. It reasoned as follows:

> I believe [Taylor] had a reasonable lawful opportunity to avoid this simply by asking to be taken out of the cage. I believe

8

that [Taylor] acted recklessly by remaining in the cage, where according to [Taylor], he was being taunted. He was being taunted a half hour before the attack, and he remained in the cage and didn't ask to be taken out.

And so assuming for a moment that I have to accept the absurd notion that a man is more dangerous and creates an imminent threat when he puts himself in handcuffs and that [Taylor's] attack on him for . . .

. . .

Two minutes and thirty-seven seconds, [Taylor] was attacking Mr. Bistrian with a deadly weapon through three cans of OC spray, I just think you haven't remotely made out justification. I don't think there was an immediate unlawful threat of death or serious bodily injury to himself or others.

I think that taking all the evidence in the light most favorable to [Taylor], I don't think [Taylor] thought he was about to attack

9

him. I think [Taylor's] testimony is that he was concerned that he might, and he was going to get him first. Taking [Taylor's] testimony as true, I think your client wanted to do a preemptive strike, and he thought at some point, accepting what he says is true, that Mr. Bistrian was going to attack him, but certainly not in that cage, certainly not in that cage.

And second, that he had a well grounded fear or a reasonable belief that the threat would be carried out if he did not commit the offense. Each time he cut Mr. Bistrian, that could be construed as a separate assault. And certainly by the time Mr. Bistrian was on the ground, and [Taylor] continued to cut him with the knife, he couldn't possibly have had a well grounded or reasonable fear that the threat would be carried out if he didn't keep knifing him.

But perhaps, perhaps most significantly, that Mr. Taylor's criminal action was directly caused by the need to avoid the threatened harm, and that Mr.

10

Taylor had no reasonable lawful opportunity to avoid the threatened harm without committing the offense. I think he plainly did, and he didn't avail himself of that opportunity. He didn't even try. He never asked the guard to be taken out. And I don't think that — I don't think he availed himself of that reasonable lawful opportunity.

And so although I would allow [Taylor] to call Mr. Bistrian because he's the victim of this case, [Taylor has] elected not to call Mr. Bistrian, and the other witnesses, I believe down to the expert, do not provide . . . , accepting everything they say is true, don't provide [Taylor] with a complete defense of justification, and so I have the discretion to preclude the presentation of that defense.

The District Court instructed the jury that the government bore the burden of proving beyond a reasonable doubt that Taylor: (1) struck Bistrian intentionally; (2) used a dangerous weapon, i.e., a razor, as charged in the indictment; (3) acted with the intent to cause bodily harm; and (4) intentionally struck Bistrian within the special maritime and territorial jurisdiction of the United States. The District Court declined

11

to provide any instruction concerning a just cause or excuse for the offense.

After his conviction, Taylor moved for acquittal and for a new trial. The District Court issued a 19-page written opinion denying the motions and explaining, among other things, its decisions to preclude Taylor from offering additional witnesses and not to instruct the jury about justification. In response to Taylor's argument that the absence of just cause or excuse is an element of an 18 U.S.C. § 113(a)(3) offense, the District Court concluded that the absence of just cause or excuse is an affirmative defense to, not an element of, a § 113(a)(3) violation.

Taylor now appeals.[1]

## II.

On appeal, Taylor first argues that the District Court erred in failing to instruct the jury that the absence of just cause or excuse is an element of an 18 U.S.C. § 113(a)(3) offense that the government must establish by proof beyond a reasonable doubt. 18 U.S.C. § 113(a)(3) provides:

> Whoever, within the special maritime and territorial jurisdiction of the United States, is guilty of an assault shall be punished as follows . . . Assault

---

[1] The District Court had jurisdiction over this case under 18 U.S.C. § 3231. Our jurisdiction to review the judgment of conviction arises under 28 U.S.C. § 1291.

with a dangerous weapon, with intent to do bodily harm, ***and without just cause or excuse***, by a fine under this title or imprisonment for not more than ten years, or both.

(emphasis added). The language of this provision is unique in the federal assault statute, 18 U.S.C. § 113: of the seven types of assault listed, only this provision, for assault with a dangerous weapon, includes a specific reference to "just cause or excuse." Although we cannot be sure why Congress included those words in subsection (a)(3), but not in the other subsections of the statute, the weight of the authority and relevant Supreme Court precedent support the District Court's conclusion that they refer to an affirmative defense that the defendant bears the burden of proving by a preponderance of the evidence.

Few cases have discussed this point in any detail. But, as both parties acknowledge, the great majority of cases describing the elements of § 113(a)(3) or its predecessor, § 113(c), state (without much, or any, supporting analysis) that a conviction under that subsection requires proof of only three elements: (1) assault; (2) with specific intent to inflict bodily harm; and (3) use of a "dangerous weapon." *See, e.g.*, *United States v. Herron*, 539 F.3d 881, 886 (8th Cir. 2008) ("The elements of Assault with a Dangerous Weapon require that the defendant: 1) assault the victim; 2) intend to do bodily harm; and 3) use a dangerous weapon to commit the assault."); *United States v. Smith*, 520 F.3d 1097, 1101 (9th Cir. 2008) (stating that assault with a dangerous weapon under 18 U.S.C. § 113(a)(3) "has three elements: (1) that the defendant intentionally struck or wounded the victim; (2) that

13

the defendant acted with the specific intent to do bodily harm; and (3) that the defendant used a 'dangerous weapon'"); *see also United States v. Estrada-Fernandez*, 150 F.3d 491, 494 (5th Cir. 1998) (per curiam); *United States v. Sturgis*, 48 F.3d 784, 786 (4th Cir. 1995); *United States v. Johnson*, 967 F.2d 1431, 1433 (10th Cir. 1992), *abrogated on other grounds by Lewis v. United States*, 523 U.S. 155, 162 (1998).  These cases do not list the lack of a just cause or excuse as an element of the offense.

Another line of cases acknowledges the statute's "without just cause or excuse" language and explicitly concludes that the government does not need to plead or prove the absence of a just cause or excuse to secure a conviction under § 113(a)(3).  The most recent of these, and the one on which the District Court primarily relied, is *United States v. Guilbert*, 692 F.2d 1340 (11th Cir. 1982).  In that case, after reciting the three elements of assault with a dangerous weapon listed above, the court said, "[t]he existence of 'just cause or excuse' for the assault is an affirmative defense, and the government does not have the burden of pleading or proving its absence." *Id.* at 1343.  The opinion cites a string of cases for that proposition, the most substantive of which is *Hockenberry v. United States*, 422 F.2d 171 (9th Cir. 1970).  There, the court reasoned:

> It was not necessary [for the indictment] to recite that the assault was 'without just cause or excuse.'  If there was such cause or excuse, the defendant could show it; the government did not have the burden of pleading or proving its absence.  By a rule of

14

long standing, 'an indictment or other pleading founded on a general provision defining the elements of an offense, or of a right conferred, need not negative the matter of an exception made by a proviso or other distinct clause, whether in the same section or elsewhere, and * * * it is incumbent on one who relies on such an exception to set it up and establish it.'

*Id.* at 173 (quoting *McKelvey v. United States*, 260 U.S. 353, 357 (1922)). Although the reasoning in these cases is not extensive, they support the District Court's conclusion.[2]

---

[2] Taylor seeks to distinguish these cases by pointing out that *Hockenberry*, which arose out of a challenge to indictment, concerned which party bears the burden of *pleading* justification, not which party bears the burden of *proving* that issue. He does not explain the significance of that distinction, but he presumably intends to argue that, by including the "without just cause or excuse" language in the statute, Congress set up a burden-shifting scheme in which the defendant bears the burden of raising a justification that the government must then disprove beyond a reasonable doubt. As we discuss below, the Supreme Court's decision in *Dixon v. United States*, 548 U.S. 1 (2006), forecloses any such argument. Moreover, even though Taylor is right that *Hockenberry* involved a pleading question, *Guilbert* did not: the issue in that case was whether the evidence was sufficient to support a *conviction*, which necessarily entails the question

15

To counter all of this authority, Taylor cites a single case: *United States v. Bordeaux*, 570 F.3d 1041 (8th Cir. 2009). In *Bordeaux*, the Eighth Circuit Court of Appeals, considering a sufficiency-of-the-evidence challenge to a § 113(a)(3) conviction, included "acted without just cause or excuse" in a list of elements of the offense, and analyzed whether the government "presented sufficient evidence that Bordeaux acted without just cause or excuse." *Id.* at 1047-48. But the court did not consider whether that element should more properly be treated as an affirmative defense, and the government does not appear to have raised the issue. Additionally, as the government points out here, the court's interpretation of the offense in *Bordeaux* is inconsistent with another of its cases from the previous year, in which it omitted the "just cause or excuse" language from a recitation of the elements of the offense. *See Herron*, 539 F.3d at 886. Given these facts, *Bordeaux* does not present an especially compelling counterpoint to the numerous cases suggesting that "just cause or excuse" is an affirmative defense.[3]

---

of the burden of proof. Thus, even if *Hockenberry* is distinguishable on the ground Taylor suggests, *Guilbert* is not.

[3] *United States v. Wycoff*, 545 F.2d 679 (9th Cir. 1976), which Taylor raised in a post-argument submission, is similarly unhelpful. There, the court merely affirmed a defendant's assault-with-a-dangerous-weapon conviction over a challenge that the district court failed properly to notify the defendant of a change in the jury instructions. *Id.* at 683. The district court had decided, at the last minute, to include the absence of just cause or excuse as an element of the

16

Relevant Supreme Court precedent also supports the District Court's interpretation. Specifically, in *McKelvey v. United States*, 260 U.S. 353 (1922), the Supreme Court rejected an argument that the government erred in failing to charge in an indictment that the defendant did not fall within an exception contained in the statute.[4] It stated:

---

offense in its instructions. The government did not dispute, and the court did not analyze, the substance of that decision.

[4] *McKelvey* involved a charge of unlawfully obstructing free passage over unoccupied public lands of the United States. The relevant statute stated:

> That no person, by force, threats, intimidation, or by any fencing or inclosing, or any other unlawful means, shall prevent or obstruct, or shall combine and confederate with others to prevent or obstruct, any person from peaceably entering upon or establishing a settlement or residence on any tract of public land subject to settlement or entry under the public land laws of the United States, or shall prevent or obstruct free passage or transit over or through the public lands: Provided, this section shall not be held to affect the right or title of persons, who have gone upon,

17

> By repeated decisions it has come to be a settled rule in this jurisdiction that an indictment or other pleading founded on a general provision defining the elements of an offense, or of a right conferred, need not negative the matter of an exception made by a proviso or other distinct clause, whether in the same section or elsewhere, and that it is incumbent on one who relies on such an exception to set it up and establish it.

*Id.* at 357. Although *McKelvey* dealt solely with the sufficiency of an indictment, the last sentence of the quoted passage suggests that a defendant relying on an exception must both raise the exception and "establish it." In other words, where the statute contains such an exception, the defendant bears the burden of proving it.[5]

---

> improved or occupied said lands under the land laws of the United States, claiming title thereto, in good faith.

260 U.S. at 356 (quoting 23 Stat. 321 (Comp. St. § 4999)).

[5] We use *McKelvey* to illustrate our point here because it is often cited as the source of this rule. *See, e.g.*, *Dixon*, 548 U.S. at 13-14. In fact, however, numerous Supreme Court decisions before *McKelvey*, dating back at least to 1841, held

Of course, that is not the end of the analysis: applying the *McKelvey* rule in this case naturally begs the question whether the "just cause or excuse" language in § 113(a)(3) qualifies as an "exception made by a proviso or other distinct clause." Whether a particular statutory phrase constitutes a defense or an element of the offense under *McKelvey* turns on whether "the statutory definition is such that the crime may not be properly described without reference to the exception." *United States v. Prentiss*, 206 F.3d 960, 973 (10th Cir. 2000) (citing *United States v. Cook*, 84 U.S. 168, 173-74 (1872)), *aff'd in relevant part*, 256 F.3d 971, 980 (10th Cir. 2001) (en banc). If so, the exception is an element of the crime. If not, the exception is a defense. We conclude that, under the plain language of *McKelvey* as supplemented by this test, the "just cause or excuse" is a defense to, rather than an element of, § 113(a)(3).

As *McKelvey* requires, the "without just cause or excuse" language in § 113(a)(3) appears in a "distinct clause," set off by commas from the rest of the statute. This alone is not dispositive, however, since the phrase "with

_____

that the party who wishes to rely on an exception to an Act of Congress must raise it and establish it. *See, e.g.*, *Schlemmer v. Buffalo, Rochester & Pittsburgh Ry.*, 205 U.S. 1, 10 (1907) (holding that a defendant who "wishe[s] to rely upon [a] proviso" bears "the burden . . . to bring itself within an exception") (internal quotation marks omitted)) (Holmes, J.); *United States v. Dickson*, 40 U.S. 141, 165 (1841) ("In short, a proviso carves special exceptions only out of the enacting clause; and those who set up any such exception, must establish it as being within the words as well as within the reasons thereof.").

19

intent to do bodily harm," which *does* set forth an element, also appears in a distinct clause. More importantly, the former clause falls outside of the "definition" test set forth above because the offense may properly be described as an "[a]ssault with a dangerous weapon, with intent to do bodily harm," *without* referencing the "just cause or excuse" language.[6] Indeed, as discussed above, most cases that have identified the elements of the offense have done precisely that. Thus, we have no problem concluding that the "without just cause or excuse" language in § 113(a)(3) is an "exception made by a . . . distinct clause," such that, under *McKelvey*, "it is incumbent on" the defendant, "who relies on" the exception, "to set it up and establish it." 260 U.S. at 357.

Another, more recent Supreme Court case, *Dixon v. United States*, 548 U.S. 1 (2006), reinforces our conclusion that Taylor bore the burden of establishing the existence of a just cause or excuse in this case. In *Dixon*, the defendant, who was indicted and tried on federal firearms charges, asserted a duress defense. She argued that as the defendant, she bore the burden of production on the defense, but that the burden then shifted to the government to disprove it beyond a reasonable doubt.

The Supreme Court disagreed. It first concluded that placing the burden of proving duress on the defendant did not

---

[6] Taylor effectively concedes this point in his brief, when he states that the statute "requires the government to prove the absence of 'just cause or excuse' *when applicable under the facts of a given case*." Appellant's Br. 31 (emphasis added). If, as Taylor suggests, the "just cause or excuse" language does not apply in every case, then, plainly, the absence of a just cause or excuse is not an essential element of the offense.

20

violate the Due Process Clause of the Constitution because proof of duress could "in no way disprove[] an element" of the firearm-possession charge, including the requisite "knowing" mens rea. *Id.* at 7; *see also United States v. Dodd*, 225 F.3d 340, 344 (3d Cir. 2000) ("Although the Due Process Clause requires the government to prove all elements of the charged offense beyond a reasonable doubt, and therefore requires the government to disprove beyond a reasonable doubt any defenses that negate an element of the charged offense, there is no constitutional bar to the defendant's bearing the burden of persuasion on defenses that do not negate an element of the offense.").

The *Dixon* Court also held that placing the burden of proving duress on the defendant in that case comported with federal common law. It noted that, "at common law, the burden of proving affirmative defenses—indeed, all . . . circumstances of justification, excuse or alleviation—rested on the defendant." *Dixon*, 548 U.S. at 8 (internal quotation marks and citations omitted). This rule, the Court went on to explain, "accords with the general evidentiary rule that the burdens of producing evidence and of persuasion with regard to any given issue are both generally allocated to the same party" and "the doctrine that where the facts with regard to an issue lie peculiarly in the knowledge of a party, that party has the burden of proving the issue." *Id.* (internal quotation marks and citations omitted). The Court then reasoned that, even though the firearm offense statute "does not mention the defense of duress," it could "safely assume that the 1968 Congress [that enacted the firearm statute] was familiar with both the long-established common-law rule and the rule applied in *McKelvey*" and that Congress "would have expected federal courts to apply a similar approach to any

21

affirmative defense that might be asserted as a justification or excuse for violating the new law." *Id.* at 13-14 (footnote omitted). In other words, the Court "presume[d] that Congress intended the petitioner to bear the burden of proving the defense of duress by a preponderance of the evidence." *Id.* at 17.

The same logic applies in this case. The existence of just cause or excuse does not disprove the elements of assault under § 113(a)(3), namely, physical attack, intent to do bodily harm, and use of a dangerous weapon. Accordingly, under the rule of *Dixon* and *Dodd*, placing the burden of proving the absence of just cause or excuse on the defendant does not run afoul of the Due Process Clause.

And, as *Dixon* makes clear, placing the burden of proving justification on Taylor in this case also is consistent with common law and basic principles of statutory interpretation. The same common-law rule that places the burden of proving duress on the defendant also applies to issues involving justification or excuse. *Id.* at 8. That rule makes sense here for the same reasons the Court noted in *Dixon*: it allocates the burdens of production and persuasion to the same party, and it places those burdens on the party with peculiar knowledge of the relevant facts. In this case, Taylor's justification defense depended on his testimony that he feared that Bistrian would attack him first and that he feared Bistrian would slip out of his handcuffs and use them as a weapon. Particularly given its inability to compel Taylor to testify, the government would have had a difficult time obtaining that information on its own.

Moreover, the inference about congressional intent the Court relied on in *Dixon* — that, absent some indication to

22

the contrary, Congress intended that the "long-established common-law rule" that the defendant bears the burden of proving justification or excuse and "the rule applied in *McKelvey*" would guide federal courts' analyses — applies with even greater force in this case.[7] If we are to presume, as the Court did in *Dixon*, that Congress legislates with those rules in mind, then surely more than a simple reference to a particular defense, as in § 113(a)(3), is needed to evince Congress's intent to convert a traditional common-law defense into an element of the government's affirmative case. Indeed, given that the *Dixon* Court considered the absence of any reference to a duress defense in the firearm statute to be a weakness, *see, e.g.*, 548 U.S. at 13-14 ("*Even though the Safe Streets Act does not mention the defense of duress*, we can safely assume that the 1968 Congress was familiar with both the long-established common-law rule and the rule applied in *McKelvey* and that it would have expected federal courts to apply a similar approach to any affirmative defense that might be asserted as a justification or excuse for violating the new law." (emphasis added) (footnote omitted)), the same inferences must apply even more forcefully in a case like this one, in which the statute specifically mentions the defense. Accordingly, we interpret § 113(a)(3)'s reference to a justification or excuse as a reference to common-law

---

[7] We are aware that *McKelvey* was decided in 1922, whereas the relevant statutory language in this case was enacted earlier, in 1909. But, as noted above, the principle for which *McKelvey* stands was established and applied in numerous pre-1909 Supreme Court decisions. Thus, the substance of *Dixon*'s presumption retains its force in this case.

23

justification and excuse defenses, which the defendant bears the burden of proving by a preponderance of the evidence.[8]

We do not lightly dismiss Taylor's textual argument, that reading the statute in this way renders the words "without just cause or excuse" superfluous because courts have allowed defendants to raise common-law justification defenses to the other subsections of § 113 that do not contain

---

[8] For similar reasons, *Dixon* also forecloses Taylor's alternative argument that the reference to just cause or excuse in § 113(a)(3) implies a complicated burden-shifting paradigm, in which the burden shifts to the government to disprove justification beyond a reasonable doubt after the defendant raises the issue and adduces some evidence to support it. *See* Appellant's Reply Br. 5-6 (citing *United States v. Lawrence*, 349 F.3d 109, 122 (3d Cir. 2003)). For one thing, nothing in the text of the statute suggests such an approach. It would run counter to *Dixon*'s presumption that Congress legislates with common-law principles in mind to conclude that Congress intended to set up a burden-shifting scheme when all it did was use the words "without just cause or excuse." More directly, this is precisely the argument that the Supreme Court rejected in *Dixon*. Dixon conceded that she bore the burden of production on her duress defense, 548 U.S. at 4, but argued that "modern common law" requires the government to disprove affirmative defenses beyond a reasonable doubt in criminal cases, *see id.* at 8. The Supreme Court rejected that argument and applied "[t]he long-established common-law rule . . . that the burden of proving duress rests on the defendant" instead. *Id.* at 15. Taylor has offered us no reason to conclude, contrary to *Dixon*, that the ordinary common-law rule does not govern this case as well.

24

that phrase. Indeed, we confess that, given the complete absence of legislative history and the fact that the language was first added to the statute in 1909, we cannot be entirely sure what Congress had in mind. But two additional points bolster our conclusion that "without just cause or excuse" is not an element of a § 113(a)(3) offense. First, although mindful of the general principle that we should avoid interpretations that effectively read words out of a statute, *see, e.g.*, *Rosenberg v. XM Ventures*, 274 F.3d 137, 141 (3d Cir. 2001), we believe that the specific, on-point Supreme Court cases in this area, *McKelvey* and *Dixon*, take precedence over that broad, generally applicable canon of statutory interpretation here.

Second, we question the foundations of Taylor's argument. Taylor presumes that defendants charged with assaults under subsections of § 113 other than § 113(a)(3) may pursue common-law defenses, and, indeed, the government admits that its practice has been not to object to self-defense or other justification instructions in cases prosecuted under other subsections of § 113. But the government's practice is not conclusive evidence of congressional intent. Because "federal crimes are defined by statute rather than by common law," *United States v. Oakland Cannabis Buyers' Coop.*, 532 U.S. 483, 490 (2001), the availability of common-law defenses to federal crimes is not a foregone conclusion, *cf. id.* at 491 (reserving the question whether common-law necessity "can ever be a defense when the federal statute does not expressly provide for it"); *see also Dixon*, 548 U.S. at 13 & n.7 (assuming, without deciding, that common-law duress defense is available to federal statutory firearm crime). Perhaps, by including the "without just cause or excuse" language in the predecessor versions of

25

§ 113(a)(3), but not in the other subsections of § 113, Congress intended to make common-law justification and excuse defenses available for assaults with a dangerous weapon, but not for the other assault offenses set forth in § 113. We need not reach any definitive conclusion on this issue, however, because we are satisfied that the other reasons set forth above adequately support our conclusion as to the meaning of those words in § 113(a)(3).

In light of *McKelvey*, *Dixon*, and for the reasons discussed above, we agree with the District Court that in this case the burden of proving a "just cause or excuse" for the assault rested with Taylor, the defendant.

## III.

Taylor raises three additional issues, none of which warrants reversal. First, Taylor challenges the District Court's exclusion of certain additional witnesses related to his justification defense and its refusal to instruct the jury on justification. But, as the District Court correctly found, the evidence plainly does not support such a defense. Second, Taylor argues that the District Court infringed his Fifth Amendment right against self-incrimination by "forcing" him to testify as a condition precedent to admitting the remaining evidence of his justification defense. In fact, though, the District Court did not force Taylor to testify at all, and it clearly informed him from the outset that the proffered evidence was insufficient to establish justification as a matter of law. Third, and finally, Taylor appeals the District Court's denial of his motion to dismiss the indictment for selective prosecution. Taylor's theory here — that he was prosecuted for an assault on a white inmate, but not for an earlier assault on two black inmates — does not suggest, let alone provide

26

the required "clear evidence" of, discriminatory intent or effect.

## A.

The District Court did not err in precluding Taylor from offering additional witnesses to support his justification defense or in refusing to include the defense in its jury charge. The tests for precluding a defendant from offering a defense and for denying an instruction on a particular defense are the same: whether the evidence presented (or proffered) is legally sufficient to support the defense. *See United States v. Mike*, 655 F.3d 167, 175 (3d Cir. 2011) (defendant whose evidence does not support a particular affirmative defense is not "entitled" to a jury instruction on that defense); *United States v. Miller*, 59 F.3d 417, 421-22 (3d Cir. 1995) (district court did not err in precluding defendant from offering evidence of duress where proffered evidence was insufficient to establish duress as a matter of law); *cf. Mathews v. United States*, 485 U.S. 58, 63 (1988) ("As a general proposition a defendant is entitled to an instruction as to any recognized defense *for which there exists evidence sufficient for a reasonable jury to find in his favor*." (emphasis added)).

The District Court properly analyzed Taylor's proffer under the Model Jury Instructions,[9] and concluded that his

---

[9] Taylor's argument on appeal that the District Court applied the wrong test to evaluate his justification defense is meritless. The model instruction applies broadly across all types of cases. Moreover, although Taylor argues that the District Court should have evaluated his defense according to "general justification principles," he does not articulate what

proposed defense did not satisfy *any* of the required elements, as follows. First, Taylor was not facing an immediate threat of attack because Bistrian was handcuffed. Second, Taylor did not have a reasonable fear that the threat would be carried out if he did not attack Bistrian. Taylor's assertion that Bistrian was more dangerous in handcuffs, since he knew how to escape them and use them as a weapon, was belied by the fact that Taylor did not feel the need to attack Bistrian when he was handcuffed at the beginning of the recreation hour. Third, Taylor's attack was not directly caused by a need to avoid harm because it was not made in response to any immediate threat by Bistrian. Despite Bistrian's alleged verbal threat to Taylor during the recreation time, Bistrian and Taylor had been pacing together in the same cage without any physical contact for almost an hour before Taylor attacked. Moreover, Taylor did not take any steps to avoid any perceived threat, e.g., he did not report the threats to prison staff or ask to be removed from the yard at any time.[10] Fourth, and finally, by choosing to remain in the yard with Bistrian, rather than asking the authorities to take him back to his cell (which the prison guards testified they would have

---

those principles are or how they differ from the model-instruction standard the District Court applied.

[10] Also, as the District Court pointed out in its oral decision, the attack continued for two minutes and thirty-seven seconds, despite the guards' use of three cans of pepper spray, and only ended when the guards used a "flash bang" grenade to stun Taylor. All of those facts are inconsistent with limited, defensive action that is *necessary* to avoid imminent harm.

28

done), Taylor recklessly placed himself in the situation that gave rise to the assault.

The District Court's conclusions are manifestly correct. Moreover, as the District Court also noted, none of the testimony Taylor proffered would have remedied the defects the District Court identified. On this record, it is difficult to imagine any reasonable person reaching a contrary result.

**B.**

Taylor argues that the District Court violated his Fifth Amendment rights by requiring him to take the stand as a condition precedent to the presentation of his justification defense. To support his argument, Taylor relies primarily on *Brooks v. Tennessee*, 406 U.S. 605 (1972), in which the Supreme Court held that a Tennessee statute that required defendants who intended to testify to take the stand as the first defense witness violated the Fifth Amendment. Noting that a defendant "cannot be absolutely certain that his witnesses will testify as expected or that they will be effective on the stand," the Court held that the Tennessee statute "cast[] a heavy burden on a defendant's otherwise unconditional right not to take the stand" by forcing him to testify before the precise contours of the other witnesses' testimony were known. *Id.* at 609-11. The same thing happened in this case, Taylor argues, because the District Court suspended its ruling on the merits of his justification defense until after he testified, thereby denying Taylor the choice to remain silent depending on the testimony of the other witnesses.

That argument fails on the facts. The District Court did not force Taylor to testify. Instead, it denied the

29

government's request to *preclude* Taylor from testifying.[11] And, unlike in *Brooks*, the District Court here was not enforcing a blanket rule about defendant's testimony; it made a careful, case-specific and well founded decision after considering the defendant's proffer. Furthermore, the District Court made clear from the outset, before Taylor testified, that it did not believe that Taylor's testimony, standing alone or as corroborated by the proposed additional witnesses, would establish all of the necessary elements of a justification defense, allowing Taylor to make an informed decision as to whether he should testify. Thus, this case simply does not raise the same type of concerns as *Brooks*.

Moreover, as the District Court pointed out (and Taylor's counsel acknowledged), the testimony of the other witnesses, none of whom observed the actual assault, was offered only to "corroborate or support" Taylor's version of events. Absent Taylor's testimony, then, none of the other witnesses' testimony would even have been relevant to the case.[12] Thus, the alternative to the District Court's ruling in

---

[11] Under the circumstances of this case, we need not, and do not, evaluate the District Court's statement that it could have precluded Taylor from testifying altogether.

[12] In that respect, this case is like *United States v. Singh*, 811 F.2d 758 (2d Cir. 1987), in which the Second Circuit Court of Appeals rejected a defendant's argument based on *Brooks*. There, the district court had precluded the defendant from pursuing certain lines of cross examination based on hearsay until the defendant offered a first-hand account of the underlying events. The Second Circuit concluded that "the [district] court did not compel appellant to testify at all";

30

this case was not that Taylor would have remained silent until all of the other witnesses testified, as the Court envisioned in *Brooks*; it was that *all* of the testimony, including Taylor's, would have been excluded.[13]   We do not find any Fifth Amendment violation in this case.

## C.

Finally, Taylor appeals the District Court's decisions denying his motion to dismiss the indictment for selective prosecution and denying him discovery on that motion.  His theory is that he was improperly selected for prosecution because his victim in this case was white.  To support that

---

instead, "[i]t merely refused to accept the proffered testimony of other witnesses until a proper foundation was laid."  *Id.* at 762.  The same is true here:  Taylor's testimony provided the necessary foundation for the testimony of the other proposed witnesses.  *See generally Geders v. United States*, 425 U.S. 80, 86 (1976) (trial judge in a criminal case "may determine generally the order in which parties will adduce proof"; "may refuse to allow cumulative, repetitive, or irrelevant testimony"; and must "exert substantial control over the proceedings").

[13]   We note, further, that Taylor did not suffer any prejudice from the District Court's ruling.  This is not a case in which the defendant would have been acquitted absent his purportedly forced testimony.  Because the entire assault was captured on prison videotape, there was no question as to what happened or who was responsible for the assault; the only question was whether Taylor's actions were justified. And, as discussed above, the evidence Taylor proffered on that issue was legally insufficient to support his defense.

claim, he pointed out that he was not prosecuted for an earlier assault on two black victims.

When analyzing selective prosecution claims, we review district courts' findings of facts for clear error and the application of legal precepts de novo. *United States v. Schoolcraft*, 879 F.2d 64, 67 (3d Cir. 1989). The district court's denial of discovery on such a motion is reviewable for abuse of discretion. *United States v. Hedaithy*, 392 F.3d 580, 605 (3d Cir. 2004).

To establish selective prosecution, the defendant must "provide evidence that persons similarly situated have not been prosecuted" and that "the decision to prosecute was made on the basis of an unjustifiable standard, such as race, religion, or some other arbitrary factor." *Schoolcraft*, 879 F.2d at 68. The defendant bears the burden of proof, *id.*, and must establish each of these elements with "clear evidence" sufficient to overcome the presumption of regularity that attaches to decisions to prosecute, *United States v. Armstrong*, 517 U.S. 456, 464 (1996). "The required threshold to obtain discovery" on such a motion is "some evidence tending to show the existence of the essential elements of the defense, discriminatory effect and discriminatory intent." *Hedaithy*, 392 F.3d at 607 (internal quotation marks omitted).

Given these high standards, it is clear that the District Court in this case did not abuse its discretion by denying Taylor discovery or err in denying his motion to dismiss. That Taylor was prosecuted for one assault, but not for another, does not, without more, provide "clear evidence" of a discriminatory effect or discriminatory intent. Taylor has not offered any other examples of defendants who assaulted both white and black inmates, but were only prosecuted for

assaulting the white inmates. And Taylor-after-the-second-assault is not "similarly situated" to Taylor-after-the-first-assault for the obvious reason that the incident that gave rise to the charges in this case occurred against the backdrop of Taylor's history of disciplinary problems, including the previous assault on the black inmates. Accordingly, Taylor did not present sufficient evidence to satisfy the threshold for obtaining discovery on his selective prosecution claim, let alone dismissal of the indictment on those grounds, and this argument does not provide any basis on which we could or should reverse the judgment of the District Court.

## IV.

For the foregoing reasons, we will affirm the judgment of the District Court.