**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-3737
_____

UNITED STATES OF AMERICA

v.

JAMES DIXON,
                              Appellant
_____

Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Crim. No. 4:11-cr-00350-001)
District Judge: Honorable Christopher C. Conner
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
December 8, 2014
_____

Before: VANASKIE, COWEN, and VAN ANTWERPEN, *Circuit Judges*

(Opinion Filed: January 7, 2015)
_____

OPINION[*]
_____

VANASKIE, *Circuit Judge*.

Appellant James Dixon, an inmate in federal custody, was indicted and convicted

of one count of assaulting a correctional officer under 18 U.S.C. § 111. Prior to trial, the

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7
does not constitute binding precedent.

District Court denied Dixon's motion seeking to dismiss the indictment on selective prosecution grounds. Dixon challenges this ruling on appeal. Discerning no error in the District Court's denial of the motion to dismiss, we will affirm.

I.

On the morning of June 21, 2010, a physical altercation erupted between several inmates and staff members in the common area of Unit 2B of the United States Penitentiary in Allenwood, Pennsylvania. The incident began when Officer George Sanders ordered inmate Kevin Hickman to place his hands on a railing in preparation for a search. Hickman refused this direct order, and, within seconds, the two began to grapple with each other.

Witnessing this fight, Officer James Bubb ran to aid Officer Sanders and secure Hickman. Officer Bubb's efforts were derailed by another inmate, Oloyede Johnson, who struck him across the chest and temporarily knocked him off his feet. Officer Bubb returned to his feet and exchanged blows with Johnson. Dixon intervened from behind, grabbing Officer Bubb around the arms and chest and violently pulling him to the ground. Dixon held Officer Bubb in place as Johnson punched him several times and kicked him in the ribs.

Additional officers responded to the scene and eventually secured the combative inmates. After order was restored, Officer Bubb sought medical treatment for injuries to his arm and chest. While searching Unit 2B following the incident, officers discovered a

metal knife in a trash can. The knife was wrapped in a bloodstained shirt with Hickman's name on the tag.

On December 8, 2011, a grand jury in the Middle District of Pennsylvania indicted Dixon on one count of assaulting a federal correctional officer, in violation of 18 U.S.C. § 111(a)(1) and (b). Dixon subsequently moved to dismiss the indictment on selective prosecution grounds. While Dixon and the other combative inmates all received administrative disciplinary sanctions for their respective roles in the altercation, Dixon noted that he was the only inmate who was criminally charged for his conduct. Dixon claimed that he was impermissibly selected for prosecution because he exercised his Fifth Amendment right to silence by refusing to speak with FBI agents during their investigation concerning the knife recovered following the incident. The District Court denied Dixon's motion by Memorandum and Order issued on February 22, 2013.

Dixon waived his right to a trial by jury, and a bench trial was held on February 27, 2013. The Government introduced video footage of the melee, along with the testimony of Officer Bubb, the paramedic who treated Bubb, and a special investigative agent from the penitentiary. Dixon did not contest that he participated in the fight as depicted in the video and described by Officer Bubb. Instead, Dixon argued that he should not be subject to the heightened penalty for assaults causing "bodily injury" under § 111(b) because Officer Bubb's injuries were minor.[1] The District Court rejected this

---

[1] While an individual may be sentenced under § 111(a) to a maximum term of imprisonment of eight years for assaulting a federal correctional officer, this maximum is

3

argument, adjudged Dixon guilty, and ultimately sentenced him to a term of imprisonment of 120 months (to run consecutively to the term he was serving at the time of the assault).

This appeal followed, with Dixon challenging only the District Court's denial of his motion to dismiss the indictment on selective prosecution grounds.

## II.

The District Court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction under 28 U.S.C. § 1291. When analyzing a claim of selective prosecution, we review a district court's findings of facts for clear error and its application of legal precepts *de novo*. *United States v. Taylor*, 686 F.3d 182, 197 (3d Cir. 2012).

## III.

Dixon argues that the District Court erred in rejecting his selective prosecution claim. To prevail on such a claim, a "defendant must 'provide evidence that [1] persons similarly situated have not been prosecuted' and that [2] 'the decision to prosecute was made on the basis of an unjustifiable standard, such as race, religion, or some other arbitrary factor.'" *Taylor*, 686 F.3d at 197 (quoting *United States v. Schoolcraft*, 879 F.2d 64, 68 (3d Cir. 1989)). The defendant bears the burden of proving each of these elements with "clear evidence" sufficient to overcome the presumption of regularity that attaches to decisions to prosecute. *Id.*

---

increased to 20 years pursuant to § 111(b) if the assailant "uses a deadly or dangerous weapon" or "inflicts bodily injury." *See* 18 U.S.C. § 111(a)(1) and (b).

4

The District Court concluded that Dixon failed to meet his burden with respect to either element, and we agree. As to the first element, the District Court found that Dixon was not similarly situated to the other inmates who participated in the altercation but were not criminally prosecuted for their conduct. The court reasoned that these inmates differed from Dixon because they were serving life sentences at the time of the fracas, while Dixon was slated for release from custody in three years' time.

As to the second element, the District Court noted the decreased deterrent value of criminally prosecuting inmates already serving life sentences, and concluded that such a consideration was not an improper reason for declining to pursue charges against the other inmates. The District Court also rejected Dixon's bare assertion that he was prosecuted because he declined to speak with FBI agents about the metal knife recovered following the fight. The court observed that Dixon did not allege that he was threatened with prosecution if he did not cooperate or suggest that other inmates were spared prosecution because they cooperated.

Although Dixon generally disagrees with the District Court's decision, he has offered no evidence or argument warranting a different result on appeal. That Dixon was not already serving a life sentence *is* a sound basis for finding that the others involved in the assault were not similarly situated. And the decision to prosecute only Dixon did not rest on some prohibited ground. Nor was the decision not to prosecute those serving life sentences arbitrary.

IV.

5

Because Dixon failed to proffer clear evidence of selective prosecution, we will affirm the District Court's order of February 22, 2013, denying his motion to dismiss the indictment.  As this is the only claim presented on appeal, we will also affirm the judgment of conviction entered on August 28, 2013.