FUENTES, Circuit Judge, dissenting. Crystallex, a Canadian company, owned the exclusive rights to Las Cristinas, a gold mine in the Republic of Venezuela (“Venezuela”). According to the ccimplaint, the mine has one of the largest unmined gold reserves in the world, between 17 and 26 million ounces of. gold. For nearly a decade, Crystallex invested more than $640 million to develop the mine. However, despite Crystallex’s many applications, Venezuela never issued the permits needed to extract and sell gold. Eventually, claiming that Crystallex had stalled progress on the mine’s development, Venezuela terminated Crystallex’s mining agreement and seized the mine. According, to Crystallex, this was all part of Venezuela’s scheme to expropriate its substantial investment. Following the seizure, Venezuela transferred Crystallex’s interest in the mine' to Petróleos de Venezuela, S.A. (“Petróleos”), a state-owned company. Petróleos, in turn, sold 40% of that interest to the Venezuelan Central Bank for $9.5 billion. Venezuela’s seizure forced Crystallex into bankruptcy. Having lost its entire investment in the mine, Crystallex brought an arbitration against Venezuela under a treaty between Canada and Venezuela. Ultimately, the arbitration tribunal found that Venezuela’s conduct violated the treaty and awarded Crystallex over $T.2 billion in damages.[1] While the arbitration was pending, Venezuela repeatedly, including through its former President Hugo Chávez, maintained that it would refuse to pay any arbitration award. To that end, Venezuela devised a fraudulent scheme to transfer $2.8 billion out of the United States. It did so through a complex series of debt offerings and dividend transfers involving Pe-tróleos and its wholly-owned Delaware subsidiaries, Citgo Holding, Inc. (“Citgo Holding”) and defendant PDV Holding, Inc. (“PDV Holding”).[2] Venezuela’s purpose was clear: to move its assets out of the United States to prevent judgment creditors like Crystallex from executing upon them. The following diagram depicts the flow of funds from the United States to Venezuela as alleged by Crystallex: [[Image here]] Against this background, the majority holds that Crystallex cannot assert a claim against PDV Holding—the only remaining defendant in this case—under the Delaware Uniform Fraudulent Transfer Act (the “Fraudulent Transfer Act” or the “Act”) because PDV Holding, a Delaware corporation, was merely a non-debtor transferor, and not a debtor or transferee, in the fraudulent scheme. I disagree. I would affirm the District Court. I would conclude that Crystallex has adequately pled a claim under the Fraudulent Transfer Act against PDV Holding, a direct participant in the fraudulent transfer. Specifically, as the District Court found, PDV Holding’s issuance of a $2.8 billion dividend to Petróleos, at Venezuela’s direction, was a “transfer” of debtor property “by a debtor” under the Fraudulent Transfer Act. And, like the District Court, I would find that even though PDV Holding was not a debtor to Crystallex, it clearly facilitated the fraudulent transfer and is therefore a proper defendant in this case. As I view the facts, it cannot be that the Fraudulent Transfer Act, which is firmly grounded in principles of equity, leaves Crystallex—the victim of a purposeful and complicated ft’aud—without any -remedy for PDV Holding’s role in transferring $2.8 billion out of the United States to avoid Venezuela’s creditors. The Fraudulent Transfer Act does not support such a result. However, today the majority signals that a party, such as PDV Holding, may knowingly participate in a fraudulent transfer so long as it is not a debtor. Indeed, a consequence of the majority’s holding is that, under the Fraudulent Transfer Act, a foreign sovereign—such as Venezuela—is free to fraudulently repatriate assets, so long as the party making the transfer is a non-debtor. That result does not comport with—but rather is wholly contrary to—the Act’s broad remedial purpose. Moreover, I believe the majority is wrong as a matter of law. According to the majority, the “Delaware courts have closed the door to non-debtor transferor liability under” the Fraudulent Transfer Act.[3] I cannot agree. None of the cases cited by the majority have held that non-debtor transferors are immune from liability under the Act. To the contrary, the committee that drafted the Uniform Fraudulent Transfer Act, the model statute on which the Fraudulent Transfer Act is based, plainly stated that its remedies are not exclusive.[4] Indeed, the Fraudulent Transfer Act grants courts broad latitude to craft remedies in response to fraudulent • transfers. Specifically, the Aet provides that courts may craft “[a]ny [] relief the circumstances may require.”[5] What’s more, as the District Court noted, the Act states that “principles of law and equity” should be used to “supplement its provisions” unless “displaced by the [Act’s] provisions.”[6] Importantly, the Fraudulent Transfer Act does not, by its own terms, bar a claim against a non-debtor transferor such as PDV Holding. Thus, in keeping with the Act’s requirement that courts “supplement its provisions” with the “principles of law and equity,” we must determine whether, assuming the fraudulent transfer scheme occurred as alleged, it was appropriate for the District Court to conclude that defendant PDV Holding’s “continued presence in this action is appropriate.”[7] Because I would hold that the answer is yes, I respectfully dissent. I. Crystallex Stated a Fraudulent Transfer Act Claim I completely agree with the District Court that Crystallex pled a Fraudulent Transfer Act claim against PDV Holding. I also agree with the District Court that PDV Holding’s non-debtor status does not (and should not) shield it from liability for its fraudulent repatriation of $2.8 billion to Petróleos, a Venezuelan state-owned company. A. The Dividend to Petróleos Was a “Transfer” Under the Fraudulent Transfer Act, a “transfer” includes “every mode, direct or indirect ... of disposing of or parting with an asset or an interest in an asset.”[8] “Asset” is defined broadly as “property of a debtor.”[9] The District Court found that PDV Holding’s $2.8 billion dividend to Pe-tróleos involved the “property of a debtor,” and therefore, was a “transfer” under the Act. I agree with that conclusion, and PDV Holding does not challenge it on appeal. B. The Transfer Was Made “By a Debtor” The majority first holds that Crystal-lex’s claim fails because the $2.8 billion dividend to Petróleos was made by PDV Holding, not Petróleos itself, and thus not “by a debtor” under the Fraudulent Transfer Act. I disagree. In my view, and consistent with the Act, PDV Holding’s dividend to Petróleos, as requested by Venezuela, was an indirect transfer “by a debtor.” As such, it is a clear violation of the Act. A transfer must be “by a debtor” to be actionable under the Act. As the District Court noted, a “transfer” includes “every mode, direct or indirect ... of disposing of or parting with an asset or an interest in an asset.”[10] The majority’s interpretation of “by a debtor” reads the term “indirect” out of the Act. This result does not comport with our practice of “avoid[ing] interpretations that effectively read words out of a statute.”[11] Further, the Act does not define the phrase “by a debtor.” “When words are left undefined, we have turned to ‘standard reference works such as legal and general dictionaries in order to ascertain’ their ordinary meaning.”[12] In fact, this approach mirrors the Delaware Supreme Court’s method for interpreting undefined words in statutes.[13] Merriam-Webster’s dictionary defines “by” to include “on behalf of.”[14] As such, as the District Court did, I would hold that a transfer is made “by a debtor” under the Act when it is executed on the debtor’s “behalf.” Here, Crystallex alleges that PDV Holding’s $2.8 billion dividend to Petróleos was part of a complex scheme directed by Venezuela. On these facts, I would find that PDV Holding’s dividend to Petróleos, sent on Venezuela’s behalf, was a transfer “by a debtor.” I find the majority’s arguments to the contrary unconvincing.[15] C. Equity Dictates That PDV Holding is Liable Under the Fraudulent Transfer Act Moreover, I disagree with the majority’s holding that non-debtor transferors, such as PDV Holding, are immune from liability under the Act. Specifically, the majority asserts that “Delaware courts have closed the door to non-debtor transferor liability under” the Act.[16] In this regard, the majority primarily relies on the Delaware Chancery Court’s decision in Edgewater Growth Capital Partners L.P. v. H.I.G. Capital, Inc.[17] In Edgewater, a binority owner of a corporation sought to hold the corporation’s former directors liable under the Fraudulent Transfer Act for aiding and abetting" the corporation’s sale of its assets to a senior lender. In support of its aiding and abetting theory, the minority owner alleged that the directors “conspired with” the senior lender to cause the corporation “to run an, unfair, tainted sales process.”[18] However, the, Court held that the Act “does not create a cause of action for aiding and abetting a fraudulent transfer, or conspiring to commit, a. fraudulent transfer,”[19]. In Edgewater, the Court observed that “[b]y its own terms, the [] Fraudulent Transfer Act only provides for a cause of action by a creditor against debtor-transferors or transferees.”[20] The majority interprets this to mean that Edgewater definitively holds that non-debtor transferors such as PDV Holdrng are immune from liability under :the Fraudulent Transfer Act. Admittedly, reading that sentence in isolation gives this argument some facial appeal. However, Edgewater merely addressed whether the Act recognizes an aiding and abetting claim. In fact, it does not appear that the Delaware courts have ever held that non-debtor transferors are immune from liability under the Act. Additionally, unlike the majority, I do not interpret Crystallex’s complaint as alleging an aiding and ¿betting or conspiracy •claim against PDV Holdrng. Instead, Crys-tallex asserts that PDV Holding directly participated in the fraudulent scheme. Indeed, unlike the directors in Edgewater, Crystallex' alleges that PDV Holding directly conveyed $2.8 billion in dividend proceeds to Petróleos in Venezuela. The majority also relies on In re Wickes Trust in assprting that the Delaware Chancery Court has barred non-debtor transferor liability under the Act.[21] However, In re Wickes Trust only stands for the proposition that a plaintiff cannot bring a fraudulent transfer claim unless she is a creditor of the debtor.[22]' In re Wickes Trust does not appear relevant to the question of whether the Act recognizes non-debtor transferor liability.[23] In my view, the Fraudulent Transfer Act is meant to serve a broad remedial purpose with, respect to the specific circumstances of a fraudulent transfer. As the Delaware Chancery Court has observed, the Fraudulent Transfer Act “grants a court ‘broad latitude’ ... to craft a remedy to ‘put a creditor in the position she would have been in had the fraudulent transfer not occurred.’”[24] Moreover, the Act states that “the principles of law and equity” should be used to “supplement its provisions” unless “displaced by the [Act’s] provisions.”[25] To that end, the Act provides that courts may invoke equitable principles to craft “[a]ny [] relief the circumstances may require.”[26] Crystallex alleges that, after expending a substantial amount of time and money in developing the long-inoperable gold reserves at Las Cristinas, Venezuela unlawfully usurped the mine and gifted it to Petróleos, which then sold 40% of that interest for a whopping $9.5 billion. To make matters worse, at the time Venezuela seized Las Cristinas, Crystallex had yet to receive any return on its investment because of Venezuela’s purposeful delays in issuing required permits. Moreover, after Crystallex lawfully initiated an arbitration against Venezuela, Venezuela concocted a fraudulent scheme to repatriate $2.8 billion from PDV Holding to Petróleos in Venezuela.[27] Altogether, I am hard-pressed to conceive of a scenario more worthy -of a trial court’s invocation of its broad equitable powers under the Fraudulent Transfer Act than this one. In my view, Crystallex has presented compelling and plausible facts to have its case against PDV Holding heard under the Act. I would therefore affirm the District Court.[28] II. Conclusion For the above reasons, I respectfully dissent. . The District Court for the District of Columbia later confirmed the award and entered judgment in Crystallex's favor for over $1.2 'billion. See Crystallex Int’l Corp. v. Bolivarian Republic of Venez., 244 F.Supp.3d 100, 105 (D.D.C. 2017). As of this writing, Venezuela's appeal of that decision is pending. . Interestingly, the bond offering materials said that "no assurance can be given that any of the [t] ransactions would not be challenged as a fraudulent transfer.” A-44. . Maj. Op. at 88-89. . See Unif. Fraudulent Transfer Act § 7 cmt. 1 (1984) (“The remedies specified in this section are not exclusive.”). The Uniform Fraudulent Transfer Act, which was promulgated by ' the National Conference of Commissioners on Uniform State Law in 1984, has been adopted in all but a handful of states. . 6 Del. C. § 1307(a)(3)(c). . Id. § 1310. . A-13. . 6 Del. C. § 1301(12). . Id. § 1301(2). . Id. § 1301(12) (emphasis added). . United States v. Taylor, 686 F.3d 182, 193 (3d Cir. 2012). . Eid v. Thompson, 740 F.3d 118, 123 (3d Cir. 2014) (quoting United States v. Geiser, 527 F.3d 288, 294 (3d Cir. 2008)). . See Cephas v. State, 911 A,2d 799, 801 (Del. 2006) ("Under well-settled case law, Delaware courts look to dictionaries for assistance in determining the plain meaning of terms which are not defined[.]” (quoting Lorillard Tobacco Co. v. Am. Legacy Found., 903 A.2d 728, 738 (Del. 2006))). . Merriam-Webster’s Collegiate Dictionary 157 (10th ed. 1996). . The majority argues that the scheme alleged "is not covered, or contemplated, joy [the Act]” because the transfer went to the debtor. Maj. Op. at 85. I disagree. As noted, under the Act, a "transfer” includes "every mode ... of disposing of or parting with an asset.” 6 Del. C. § 1301(12) (emphasis added). The Act does not define "disposing of.” But, in dictionary terms, “dispose of” means "to place, distribute, or arrange.” Merriam-Webster’s Collegiate Dictionary 335 (10th ed. 1996). Here, PDV Holding's dividend to Pe-tróleos caused the proceeds to be "placed” in Venezuela. From this, I would hold that PDV Holding's dividend falls within the Act because it "dispose[d] of” Venezuela’s property. To be sure, since “transfer” also includes "parting with an asset,” the phrase "disposing of” would be redundant if it only captured the movement of property away from the debt- or. See United States v. Reeves, 752 F.2d 995, 998 (5th Cir. 1985) ("A statute should be read to avoid rendering its language redundant if reasonably possible.”). . Maj. Op. at 88-89, . C.A. No. 3601-VCS, 2010 WL 720150 (Del. Ch. Mar. 3, 2010). . Id. at *1. . Id. at *2. . Id. . C.A. No. 2515-VCS, 2008 WL 4698477 (Del. Ch. Oct. 16, 2008). . Id. at *7-8. .- The majority also cites Spring Real Estate, LLC v. Echo/RT Holdings, LLC, C.A. No 7994-VCN, 2016 WL 769586 .(Del. Ch. Feb. 18, 2016), in stating that the Delaware Chancery Court “has []■ rejected fraudulent- transfer claims against non-debtor transferors under analogous provisions in the federal Bankruptcy Code.” Maj. Ops at 85. However, in that case, the Court rejected the'claim because .the assets did not belong to the debtor. Here, PDV Holding's dividend to Petróleos plainly involved debtor property. . Lake Treasure Holdings, Ltd. v. Foundry Hill GP LLC, C.A. No. 6546-VCL, 2014 WL 5192179, at *15 (Del. Ch. Oct. 10, 2014) (quoting August v. August, C.A. No. 3180-VCS, 2009 WL 458778, at *10 (Del. Ch. Feb. 20, 2009)); see also In re Mobilactive Media, LLC, C.A. No. 5725-VCP, 2013 WL 297950, at *32 (Del. Ch. Jan. 25, 2013) ("[The Fraudulent Transfer Act] provides broad remedies to creditors and leaves considerable leeway for the exercise of equitable discretion.”), . 6 Del. C. § 1310. . Id. § 1307(a)(3)(c). . The majority suggests that I conflate liability and remedies. See Maj. Op. at 88-89. Not at all. To- bring a claim under the Act, a plaintiff must allege the existence of a fraudulent transfer. See 6 Del. C. § 1304(a), As explained, I believe Crystallex did so. Thus, Crystallex- may bring "an action for relief against [that] transfer," Id. § 1307(a). In outlining the relief available in such an action, the Act enumerates remedies against debtors and transferees involved in the transfer. See id. §§ 1307(a), 1308(b). While the Act does not specify remedies against non-debtor transferors, such as PDV Holding, its directive that courts craft "[a]ny [] relief the circumstances may require” provides a clear avenue for relief here. Id. § 1307(a)(3)(c). .The majority does not reach PDV Holding's argument that, even if Crystallex stated a claim, the Foreign Sovereign Immunities Act's restrictions on prejudgment attachment of sovereign property preempt that claim. See 28 U.S.C. §§ 1609-1611. Since I believe Crys-tallex stated a claim, I would reach the issue, PDV Holding is not a foreign state; it is a Delaware corporation. See id. § 1603. As such, to the extent that Crystallex seeks yelief with regard to PDV Holding’s property, I would hold that the restrictions on prejudgment attachment of sovereign property are .inapplicable to Crystallex’s claim.