UNITED STATES of America,
Plaintiff-Appellant,

v.

Steve SCHAEFER, Defendant-Appellee.

No. 82–3008.

United States Court of Appeals,
Eleventh Circuit.

July 18, 1983.

Terrance A. Bostic, Asst. U.S. Atty., Tampa, Fla., Carolyn L. Gaines, Atty., U.S. Dept. of Justice, Washington, D.C., for plaintiff-appellant.

Edwin Mulock, Bradenton, Fla., James Birkhold, Bradenton, Fla., for defendant-appellee.

Before RONEY and KRAVITCH, Circuit Judges, and TUTTLE, Senior Circuit Judge.

RONEY, Circuit Judge:

The government appeals the dismissal of an indictment for conspiracy, importation and possession of marijuana because the government deported prior to trial and prior to any defense questioning an illegal alien who was a prospective witness in defendant's trial. The district court rendered its decision after our decision in *United States v. Avila-Dominguez*, 610 F.2d 1266 (5th Cir.), *cert. denied*, 449 U.S. 887, 101 S.Ct. 242, 66 L.Ed.2d 113 (1980), but before

the Supreme Court's decision in *United States v. Valenzuela-Bernal,* 458 U.S. ——, 102 S.Ct. 3440, 73 L.Ed.2d 1193 (1982). Because we conclude that the defendant failed to meet the standard set forth in these cases as to the showing required to obtain dismissal of an indictment, we reverse.

It is quite apparent that a number of cases will need to be decided before the principles enunciated in *Valenzuela-Bernal* and *Avila-Dominguez* come sharply into focus. Because of that, we here contrast the facts of those cases with the situation here in order to show why this case is a little different and poses a slightly different problem. Then we give the reasons why the indictment should not have been dismissed in this case.

In the Fifth Circuit case of *Avila-Dominguez,* an Immigration and Naturalization Service agent stopped a pickup truck which contained 22 illegal aliens. All were taken into custody and interviewed, but only eight were detained as material witnesses in the prosecution of defendant for transporting illegal aliens into the country, while the other 14 were permitted to return or deported to Mexico. We held that a defendant's constitutional rights are violated if an alien witness is deported before the defendant is given an opportunity to interview the witness. We further held, however, that dismissal of the indictment is not required when the defendant has failed to offer some plausible theory of how the testimony of the missing witness would have been helpful to the defense. 610 F.2d at 1269–70.

In *Valenzuela-Bernal,* the Supreme Court reversed the Ninth Circuit's requirement that the indictment must be dismissed if the deported alien's testimony could "conceivably" have benefited the defendant, a standard that could be met whenever the alien was an eyewitness to the crime. 458 U.S. at ——, 102 S.Ct. at 3443–44, 73 L.Ed.2d at 1199. In that case, Border Patrol officers stopped a car driven by the defendant, an illegal alien himself, with other illegal aliens as passengers. An Assistant United States Attorney concluded the three ap-

prehended passengers possessed no evidence material to the prosecution or defense of Valenzuela-Bernal for transporting illegal aliens, and deported two of them. The Supreme Court held that the indictment should not have been dismissed because the defendant did not make "a plausible showing that the testimony of the deported witness would have been material and favorable to his defense, in ways not merely cumulative to the testimony of available witnesses." 458 U.S. at ——, 102 S.Ct. at 3449–50, 73 L.Ed.2d at 1206.

In both cases, the defendant was clearly present throughout the commission of the crime. Schaefer suggests here, however, that the deportee might cast doubt on his presence at the site of the marijuana offloading. A brief review of the facts is helpful to understand the basis of our decision that defendant has not met the required standard.

In December 1981 a boat filled with marijuana left Colombia for Florida. Its crew included at least three foreign nationals, Alberto Coleone, Vernon Royer and Ainsley Thomas. The defendant, Steve Schaefer, allegedly helped the crew members unload the vessel's cargo once the boat arrived in American waters. Coleone, Royer and Thomas then went to a motel where they awaited the aid of their co-conspirators in arranging their return to their home countries. When their funds ran out in February 1982, they turned themselves over to the authorities.

From the second photographic spread they were shown, Royer and Thomas identified defendant Schaefer as one of the unloaders. The picture of defendant used in the second spread showed him with a mustache, as he allegedly appeared on the night of the unloading. The photograph in the first spread, from which Royer and Thomas could not identify defendant, pictured defendant without any facial hair.

Coleone testified before the grand jury that indicted the defendant and described a co-conspirator who had a mustache. He did not review any photographic spreads. He did not identify defendant. Apparently be-

cause he could not speak English, law enforcement officers interviewed him on only one occasion.

The Assistant United States Attorney in charge of the case decided that he could not in good faith continue to detain Coleone as a material witness, since a language barrier existed, Coleone had not come into contact with some of the suspected co-conspirators, and he had been on board the boat a shorter period than either Royer or Thomas, both of whom spoke English. Accordingly, on April 22, 1982, eight days after the indictment and four days after defendant's arrest, Coleone was turned over to the Immigration and Naturalization Service for deportation, which occurred shortly thereafter.

The district court, applying our decision in *Avila-Dominguez*, accepted defendant's argument that the deported witness might be unable to identify defendant or might be able to say defendant was not involved in the offloading operation. The district court reasoned:

> Obviously, therefore, it is at least a plausible theory that his defense will be dependent, in part, if not in the main, on the question of the reliability of the eyewitness identification of the material witnesses who remain, and it is entirely possible, perhaps even probable, given the equivocation of these other witnesses, that if Mr. Coleone was available, he would be unable to identify the Defendant, and although it's speculative, it's possible he might even be able to make a positive statement that this Defendant is not one of those who was seen offloading the marijuana.
>
> In short, it seems to me that as to his case Mr. Coleone was and is, indeed, a material witness, the loss of whom sufficiently demonstrates a likelihood of prejudice so that the Rule of Avila-Dominguez applies and requires the dismissal of the Indictment as to him and his motion is granted for those reasons and the Indictment as to him will be and is dismissed. .

We treat the theories of possible testimony separately. First, that the witness might testify he is unable to identify the defendant seems hardly favorable. He testified before the grand jury that the unloader had a mustache. If the government were to put the witness on the stand, that testimony would tend to corroborate the testimony of the other two witnesses. A statement that he cannot positively say whether the defendant was the unloader would hardly shift the testimony to defendant's favor. If the defendant were to put the witness on the stand, we might expect a single cross-examination question: "Can you state that the unloader was not the defendant?" A negative answer would rob his testimony of any aid to the defendant. That a witness' memory has lapsed or that he did not get a good look at the criminal is not probative of guilt or innocence. The memory and perspective of one witness to a crime may not be as good as that of others. The Supreme Court in *Valenzuela-Bernal* emphasized that the determination as to the materiality and relevance of the lost testimony should be made in the context of all the evidence. 458 U.S. at ——, —— & n. 10, 102 S.Ct. at 3447, 3450 & n. 10, 73 L.Ed.2d at 1203, 1207 & n. 10 (*quoting in part from United States v. Agurs*, 427 U.S. 97, 112–13, 96 S.Ct. 2392, 2401–02, 49 L.Ed.2d 342 (1976)). Given the two positive identifications of the defendant as the guilty party and the lack of any alibi or other evidence suggesting innocence, there is no "reasonable likelihood" that Coleone's inability to identify the defendant "could ... affect[] the judgment of the trier of fact." *Valenzuela-Bernal*, 458 U.S. at ——, 102 S.Ct. at 3450, 73 L.Ed.2d at 1207.

The second argument, that the witness might say the unloader was not the defendant, or might make a positive identification of someone else, strikes us as a throwback to the Ninth Circuit rule of "conceivable benefit," illustrating the Supreme Court's statement that "the number of situations which will satisfy this test is limited only by the imaginations of judges or defense counsel." 458 U.S. at ——, 102 S.Ct. at 3446, 73 L.Ed.2d at 1202. Such testimony, of course, would be both favor-

able and material to the defense. There is no basis on this record, however, to assume Coleone would testify to this effect. The defendant does not suggest any inconsistency between Coleone's grand jury testimony and the identification by Royer and Thomas of the defendant. He has not proferred any other evidence implying that Coleone's testimony would contradict or even differ from that of Royer and Thomas.

■ We understand that a defendant cannot show exactly what a deported witness would say and that the showing of materiality required of the defendant must be relaxed since the government is responsible for defendant's lack of access to Coleone. Materiality, however, cannot be completely dispensed with under *Valenzuela-Bernal:*

> Because prompt deportation deprives the defendant of an opportunity to interview the witnesses to determine precisely what favorable evidence they possess . . . the defendant cannot be expected to render a detailed description of their lost testimony. But this does not . . . relieve the defendant of the duty to make some showing of materiality.

458 U.S. at ——, 102 S.Ct. at 3449, 73 L.Ed.2d at 1206. *See also id.* at ——, 102 S.Ct. at 3447–48, 73 L.Ed.2d at 1204. A defendant cannot simply hypothesize the most helpful testimony the deported witness could provide. Rather, he must show some reasonable basis to believe that the deported witness would testify to material and favorable facts. *Cf. id.* at ——, 102 S.Ct. at 3449–50, 73 L.Ed.2d at 1206 (defendant must make a plausible showing that the lost testimony "would have been," not might have been, material and favorable).

■ Both *Avila-Dominguez* and *Valenzuela-Bernal* specifically note that the defendant typically knows the facts. The required showing that the lost evidence would be both material and favorable to the defense must be evaluated in this light:

> The purpose of a criminal trial is to produce evidence which shows the truth. The purpose of criminal procedure is to assure that end through fair means. It is important to remember that the defendants presumably know the truth in this case.

*United States v. Avila-Dominguez,* 610 F.2d at 1270. In *Valenzuela-Bernal,* the defense was that the defendant did not know the non-deported passenger in his vehicle was an illegal alien. Defendant suggested the missing witnesses could testify to this issue. The Supreme Court responded:

> [I]t should be remembered that respondent was present throughout the commission of this crime. No one knows better than he what the deported witnesses actually said to him, or in his presence, that might bear upon whether he knew that Romero-Morales was an illegal alien who had entered the country within the past three years. And, in light of the actual charge made in the indictment, it was only the status of Romero-Morales which was relevant to the defense. Romero-Morales, of course, remained fully available for examination by the defendant and his attorney. We thus conclude that the respondent can establish no Sixth Amendment violation without making some plausible explanation of the assistance he would have received from the testimony of the deported witnesses.

458 U.S. at ——, 102 S.Ct. at 3448–49, 73 L.Ed.2d at 1205.

■ The district court had only our opinion in *Avila-Dominguez* to work with. The Supreme Court's decision in *Valenzuela-Bernal* removes all doubt as to the showing a defendant must make to obtain a dismissal of the indictment. *Simmons v. United States,* 390 U.S. 377, 394, 88 S.Ct. 967, 976, 19 L.Ed.2d 1247 (1968), protects a defendant, who testifies in support of a motion to suppress evidence on fourth amendment grounds, from the admission of that testimony against him at trial on the issue of guilt. We need not here decide whether the same protection should be afforded a defendant who testifies at a motion to dismiss the indictment because of the deportation of a prospective witness. The defendant here failed to give any basis for the

contention that Coleone would provide favorable and material testimony. His motion to dismiss the indictment should have been denied.

REVERSED and REMANDED.