**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 19-3913 & 19-3917
_____

UNITED STATES OF AMERICA

v.

JESUS CHAVEZ,
     Appellant in No. 19-3913
_____

UNITED STATES OF AMERICA

v.

RUDY MENDOZA,
     Appellant in No. 19-3917
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(Nos. 3:18-cr-00122-001 & 002)
District Judge:  Hon. A. Richard Caputo
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
on September 20, 2021
_____

Before:  CHAGARES, HARDIMAN, and MATEY, Circuit Judges

(Opinion Filed: September 27, 2021)

_____

OPINION[*]

_____

CHAGARES, <u>Circuit</u> <u>Judge</u>.

Jesus Chavez and Rudy Mendoza were indicted in connection with the assault of another inmate at United States Penitentiary ("USP") Canaan. Before their trial, the assault victim completed his sentence and was removed to Mexico before either defendant could interview him. Also pre-trial, Mendoza decided to conduct his own defense <u>pro</u> <u>se</u>, leading Chavez to move for severance of their cases. The District Court denied the motion, Chavez and Mendoza were tried together, and both were convicted. They now seek relief from their convictions, Mendoza on the ground that the removal of the assault victim violated his constitutional rights, and Chavez on the ground that the trials should have been severed. We will affirm.

I.

We write primarily for the parties so our summary of the facts is brief. On July 17, 2017, a video camera at USP Canaan captured footage of the assault victim walking from the first floor of the cell block up to the second. The victim greeted Mendoza outside the latter's cell, and they went inside and shut the door. Meanwhile, Chavez crossed from the opposite side of the cell block's second level and stood outside of Mendoza's cell with his back to the door. A few minutes later, Chavez entered Mendoza's cell. After Chavez entered, video footage shows rapid movements through

---

[*] This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

the window of Mendoza's cell. Mendoza, Chavez, and the victim remained in the cell for approximately twelve minutes. Chavez eventually left the cell, followed quickly by Mendoza. Mendoza was bare chested and changing into a new shirt; he appeared to be covered in water. Chavez entered a nearby cell and, with the assistance of another inmate, changed his shirt. When the victim then left the cell, a correctional officer on rounds noticed him and ordered him to get down on the floor. The victim and his clothes were covered in blood.

The officer ordered all inmates in the cell block to "lock in," meaning enter their cells so the cell block could be secured. Chavez Appendix ("App.") 162. USP Canaan officers and investigators secured the scene and searched the cells of Mendoza, Chavez, and the inmate who helped Chavez change his clothes. Mendoza's cell was covered in blood, with bloody clothing on the floor, and a shank (a homemade metal weapon suitable for stabbing) was recovered from his toilet. No bloody clothing or other evidence was recovered from the other cells.

Chavez, Mendoza, and the victim were escorted away from the cell block and examined for injuries by an emergency medical technician. The victim had stab wounds and cuts on his head, neck, chest, back, and forearm, as well as a piece of metal embedded in a laceration on his head. Mendoza had two abrasions on his leg, a circular laceration on and swelling of his thumb, and decreased ability to grip. Chavez had one abrasion on the back of his left hand and another to his lower left leg.

Mendoza and Chavez were indicted in April 2018. A year later, a grand jury returned a superseding indictment charging them with assault with a deadly weapon,

3

conspiracy to commit assault with a deadly weapon, and knowingly possessing an object prohibited to federal inmates, namely a shank.

The Government interviewed the victim in September 2017. He said that he was assaulted by other inmates because he had been disciplined by prison officials "for engaging in sexual acts." Mendoza App. 80. But he refused to identify his attackers, claiming that he would be killed if he did so due to his and his assailants' gang affiliation. He also refused to participate in an intelligence debrief. The Government removed the victim to Mexico in October 2018 without notice to the defendants. Chavez filed a motion in limine seeking to preclude any evidence of an assault on the victim given his unavailability for trial, while Mendoza wrote a letter to the District Court from prison that expressed concern about his constitutional right to confront his accuser.

Mendoza's letter also expressed dissatisfaction with appointed counsel and asked permission to represent himself at trial. The court held an ex parte hearing on that issue shortly before trial and granted Mendoza's request. During the hearing, Mendoza again noted that he would like to question his accuser and suggested that the victim's absence could hinder his ability to argue self-defense and would render his trial unfair.

After the court issued its order allowing Mendoza to represent himself, Chavez moved to sever their cases on the ground that Mendoza's pro se defense in a joint trial was "pregnant with the possibility of prejudice." Chavez App. 31 (quoting United States v. Veteto, 701 F.2d 136, 139 (11th Cir. 1983)). Chavez argued that the case against him was significantly weaker than the case against Mendoza and that the probability that

4

Mendoza would make otherwise inadmissible testimonial statements in his capacity as counsel created an unacceptable risk of prejudice to Chavez.

The court denied Chavez's motion and the defendants proceeded to trial jointly. At the outset, the court instructed the jury that Mendoza was representing himself and that his questions, statements, and arguments were not evidence. Both Mendoza and counsel for Chavez admitted in their opening and closing statements that "something," some kind of "incident" or "event" or "altercation," occurred inside Mendoza's cell. Chavez App. 133-34, 210, 214. The Government put on several witnesses from USP Canaan and introduced video and photographic evidence from the time of the assault. Mendoza cross-examined the Government's witnesses largely without objection. Chavez renewed his motion for severance after the Government rested; the court "saw no prejudice to Mr. Chavez" and again denied the motion. Chavez App. 193. In giving the jury its final instructions, the District Court reminded them that Mendoza was representing himself and that what advocates say is not evidence. The jury convicted both Mendoza and Chavez of assault and Mendoza alone of possessing a shank. Following sentencing and the resolution of various post-trial motions, both defendants timely appealed.

5

II.[1]

Mendoza argues that his conviction should be vacated because, by removing the victim of the assault to Mexico without notice, the Government deprived him of the opportunity to obtain potentially favorable testimony and thereby violated the Sixth Amendment's Compulsory Process Clause and the Fifth Amendment's Due Process Clause. Chavez argues his conviction should be vacated because Mendoza, acting pro se, made incriminating, testimonial statements that would have been inadmissible against Chavez in a severed trial and that "prevented the jury from rendering an impartial judgment." Chavez Br. 6. We consider these arguments in turn.

A.

To prevail, Mendoza "must show: First, that he was deprived of the opportunity to present evidence in his favor; second, that the excluded testimony would have been material and favorable to his defense; and third, that the deprivation was arbitrary or disproportionate to any legitimate evidentiary or procedural purpose." Mills, 956 F.2d at 446; see also id. at 445 n.4 (noting that same analysis is used for due process and compulsory process cases). It is not enough that the absent witness's testimony might have provided a "conceivable benefit" to Mendoza; rather, he must "make some plausible

---

[1] The District Court had jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction pursuant to 28 U.S.C. § 1291. We review Compulsory Process Clause, Confrontation Clause, and Due Process Clause errors of the kind asserted by Mendoza for harmless error. Gov't of V.I. v. Mills, 956 F.2d 443, 448 (3d Cir. 1992); see also Crane v. Kentucky, 476 U.S. 683, 691 (1986) (Compulsory Process Clause); Delaware v. Van Arsdall, 475 U.S. 673, 684 (1986) (Confrontation Clause). We review the denial of a motion to sever for abuse of discretion. United States v. Urban, 404 F.3d 754, 775 (3d Cir. 2005).

6

showing of how the[] testimony would have been both material and favorable to his defense." United States v. Valenzuela-Bernal, 458 U.S. 858, 866-67 (1982).

Mendoza has not made such a showing. He argues that the victim might have testified that he and not Mendoza was the aggressor. This testimony would have been material and favorable to Mendoza's defense,[2] but Mendoza has not explained why it is plausible that the victim would have so testified. When interviewed by the Government, the victim said that he was assaulted by other inmates after being disciplined "for engaging in sexual acts." Mendoza App. 80. He refused to identify his attackers or participate in an intelligence debrief and gave no indication that he was the aggressor. Mendoza suggests that the victim's refusal to cooperate with the Government might mean that he would be willing to testify for the defense. This speculation does not render Mendoza's account plausible. See United States v. Schaefer, 709 F.2d 1383, 1386 (11th Cir. 1983) ("A defendant cannot simply hypothesize the most helpful testimony the deported witness could provide."). Mendoza has not shown that his right to either compulsory or due process was violated.

B.

We next consider whether Chavez's conviction should be vacated because his trial was not severed. Our criminal justice system favors the joint trial of jointly indicted defendants, but also recognizes that even properly joined cases may result in prejudice. See Zafiro v. United States, 506 U.S. 534, 538-39 (1993); Urban, 404 F.3d at 775. To

---

[2] Self-defense, also known as "justification" or "necessity," is an affirmative defense to assault. See United States v. Taylor, 686 F.3d 182, 186, 192, 194 (3d Cir. 2012); Third Cir. Model Crim. Jury Instr. § 8.04.

that end, Federal Rule of Criminal Procedure 14 provides that "[i]f the joinder of . . . defendants in . . . a consolidation for trial appears to prejudice a defendant . . . the court may . . . sever the defendants' trials, or provide any other relief that justice requires." Fed. R. Crim. P. 14(a). This Rule does not mandate severance if a party proves prejudice; "rather, it leaves the tailoring of the relief to be granted, if any, to the district court's sound discretion." Zafiro, 506 U.S. at 539. Severance is appropriate only in the event of a "serious risk" that an unsevered trial will "prevent the jury from making a reliable judgment about guilt or innocence" or otherwise "compromise" some specific right of a defendant. Id. Even where there is such a risk, however, limiting instructions or other "less drastic measures" will often be sufficient to neutralize possible prejudice, id., and the defendant bears the "heavy burden" of demonstrating both an "abuse of discretion in denying severance" and that this abuse "would lead to 'clear and substantial prejudice resulting in a manifestly unfair trial,'" Urban, 404 F.3d at 775 (citations omitted).

When reviewing the denial of a severance motion, we "determine from the record, as it existed when the motion was made, what trial developments were then reasonably foreseeable, and in that light decide whether the district court abused its discretion." United States v. Blunt, 930 F.3d 119, 124 (3d Cir. 2019) (quoting United States v. McGlory, 968 F.2d 309, 340 (3d Cir. 1992)). Chavez argues that the District Court should have severed the trials due to the risk, which he says came to pass, that Mendoza would make testimonial statements incriminating Chavez that would be inadmissible in a trial of Chavez alone. See Zafiro, 506 U.S. at 539 (noting this as one scenario that might

8

warrant severance). We see no abuse of discretion here. At the time Chavez moved to sever, Mendoza had done nothing to indicate that any risk of prejudice from his pro se defense could not be managed by limiting instructions and other "less drastic measures." Id.; compare Mendoza App. 77 (denying motion to sever in part because the District Court could "control matters") with United States v. Maxwell, No. 5:15-CR-35-2, 2017 WL 6055785, at *1 (M.D. Ga. Feb. 2, 2017) (granting motion to sever where pro se defendant had a history of disruptive behavior).

Even if the District Court had abused its discretion, we do not see any "clear and substantial" prejudice to Chavez that resulted in a "manifestly unfair trial." Blunt, 930 F.3d at 125 (quoting Urban, 404 F.3d at 775). Chavez's chief complaint is that "Mendoza essentially admitted that he had committed the assault – arguing only that the victim had instigated the 'incident,'" and "confirmed" that both Chavez and Mendoza were in Mendoza's cell during the assault. Chavez Br. 8. These statements by Mendoza may have been notionally incriminating to Chavez, but no more so than Chavez's trial counsel's own admissions to the same effect. See Chavez App. 133, 210 ("no doubt" that Chavez, Mendoza, and the victim "went into that cell," or that the victim "came out of that cell with multiple stab wounds"; "I acknowledge[] . . . that [the victim] exited that cell soaked in blood"). Chavez will not now be heard to complain about prejudice from a strategy employed by his own trial counsel — and that was eminently justifiable in light of the video evidence showing just what Mendoza and Chavez's counsel admitted to. Nor do we see any clear and substantial prejudice to Chavez in the rest of Mendoza's statements in his capacity as counsel. If anything, Mendoza's statements tended to

9

exculpate Chavez of the conspiracy charge. See, e.g., Chavez App. 135 ("The video never shows me or Chavez going looking for this dude."). Finally, any prejudice to Chavez was mitigated by the District Court's repeated instructions to the jury that Mendoza's statements were not evidence. See Urban, 404 F.3d at 776 ("We presume that the jury follows such instructions.").[3] Chavez has not met his heavy burden to show both an abuse of discretion and "clear and substantial prejudice resulting in a manifestly unfair trial." Id. at 775.

## III.

For the foregoing reasons, we will affirm the judgments of the District Court.

---

[3] To the extent Chavez argues that the evidence was not sufficient to support the jury's verdict, see Chavez Reply 2, that argument is made only in passing and is forfeited. See Barna v. Bd. of Sch. Dirs., 877 F.3d 136, 145-46 (3d Cir. 2017).

10